In re UTAH AGRICORP, INC., a
Delaware Corporation, Bankrupt.

BORG–WARNER ACCEPTANCE
CORPORATION, a Delaware
Corporation, Plaintiff,

v.

Ray TWELVES, Trustee, Robert Clendenen, Successor-Trustee, and Sears
Bank and Trust, Defendants.

Bankruptcy No. B–79–00037.

United States Bankruptcy Court,
D. Utah.

July 16, 1981.

Jay ·V. Barney, Murray, Utah, for the plaintiff.

Roger G. Segal, Salt Lake City, Utah, for the defendant, trustee.

## AMENDED MEMORANDUM DECISION

RALPH R. MABEY, Bankruptcy Judge.

Pursuant to a memorandum decision issued by the Court, judgment was entered in this case on December 5, 1980. On December 15, 1980, the plaintiff, Borg Warner Acceptance Corporation (Borg Warner), filed a Motion to Alter or Amend the Judg-ment. The Court's findings of fact are not brought into question. Rather, the motion contends there has been a misapplication of the law to the facts in question. Specifically, the motion asserts two grounds of legal misconstruction. The first is that Borg Warner gained constructive possession of the equipment upon its return to the debt-or, and thus held a perfected security inter-est as against the trustee in bankruptcy. The second contention is that the Court misapplied Utah Code Ann. § 70A–9–103(3)(e) to the harvester in question that this subsection applies only to mobile goods held as inventory leased or held for lease and not to such goods when held for retail sale. Thus, the governing subsection would be instead Utah Code Ann. § 70A–9–103(1)(d) which, Borg Warner contends, ob-viates the necessity of reperfecting in this state. Both parties filed memoranda on these issues, and the Court heard oral argu-ment. The motion was taken under advise-ment for the Court to more fully consider the impact of these contentions on its earli-er rendered decision.

The claim of Borg Warner to perfection by possession as against the trustee is with-out merit. Borg Warner apparently asserts that the debtor, Utah Agricorp, and subse-quently the trustee, obtained possession of the harvester when it was returned by Christensen Implement Company essential-ly as a "bailee," or entity holding the prop-erty in trust for the lawful owner, allegedly Borg Warner. Borg Warner claims that this "constructive possession" arose pursu-ant to their prompt notification to the trus-tee on August 15, 1979 of their claim to the harvester given via the filing of a complaint in reclamation. This "notification" would have occurred within the four month reper-fection period of Utah Code Ann. § 70A–9–103, if applicable. In the alternative, they claim perfection by possession by virtue of actual possession of the equipment granted by the Court in the course of the litigation.

Utah Agricorp filed a Chapter XI petition for reorganization under the bankruptcy laws on January 15, 1979. The harvester in question was returned to the debtor on

June 22, 1979, and the debtor was adjudicated bankrupt under Chapter VII on June 28, 1979. On this date an interim trustee was appointed, who on July 2, 1979 became, by order of the Court, the permanent trustee in this case. Therefore, when the harvester was returned, it was returned to a debtor-in-possession operating under the Act, and immediately thereafter was transferred to a trustee in bankruptcy.

■ Although it is true that a secured party may perfect its security interest in "goods" by obtaining possession of the collateral under Utah Code Ann. § 70A–9–305, the collateral must be in the actual possession of the secured party or its agent, which may include a properly notified "bailee." Official Comment 2 to § 9–305 of the Uniform Commercial Code, however, clearly specifies that "the debtor or a person controlled by him cannot qualify as such an agent for the secured party." Here, when Utah Agricorp regained possession of the collateral, it took possession as a substituted debtor who, by obtaining possession of the equipment, became primarily liable for the debt owed Borg Warner, which originated from the initial purchase of the equipment. As a debtor in this debtor-creditor relationship, Utah Agricorp could not have held the harvester as an agent or bailee for Borg Warner so as to perfect Borg Warner against intervening third parties.

■ Furthermore, when the property was returned to Utah Agricorp, it was returned to a debtor-in-possession operating under Chapter XI of the Act and shortly thereafter became subject to the interest of a trustee appointed under Chapter VII of the Act. By virtue of Section 188 of the Bankruptcy Act, the debtor-in-possession was vested with the rights of a trustee who in turn, under § 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c), was entitled to assert the status of a lien creditor against the property in question. This status is not only inconsistent with the position of a bailee or other entity holding the property in trust for another, but by virtue of its operation, both the debtor-in-possession and the trustee could assert rights to directly challenge and defeat any security interest of Borg Warner which was not properly perfected. Clearly then, whether prompt notification occurred or not, the possession of the harvester by Utah Agricorp and then the trustee did not constitute possession on behalf of Borg Warner so as to perfect its interest under Utah Code Ann. § 70A–9–305.

■ Plaintiff's further argument that they obtained possession, so as to perfect their interest, by virtue of the Court's permission given in the course of the reclamation suit, would also not qualify as perfection by possession under Utah Code Ann. § 70A–9–305. Any possession awarded by the Court during the course of the litigation was done not as an acknowledgment prior to adjudication of the superior rights of one party over another, but rather to safekeep the property until an ultimate decision could be reached. Thus, the awarding of *custody* of the property was made specifically subject to the trustee's or other party's rights, pending the decision of the Court. This qualified possession under supervision of the Court is certainly not the kind of possession contemplated in Utah Code Ann. § 70A–9–305 which can amount to the perfection of a secured interest.

■ Turning then to Borg Warner's second contention, the Court is persuaded that Utah Code Ann. § 70A–9–103(1)(d) does indeed govern this transaction rather than Section 70A–9–103(3)(e) as formerly applied by the Court. However, upon close scrutiny of the application of subsection (1)(d), the Court is convinced that the result must be the same.

Utah Code Ann. § 70A–9–103(3)(e), which is the section applied by the Court in its earlier memorandum decision, applies only to "goods which are mobile ... if the goods are equipment or are inventory leased or held for lease by the debtor to others." The Comments to § 9–103(3) of the U.C.C. reemphasize the language of the statute in that not all mobile goods held as inventory are governed by § 9–103(3), but only those held as inventory "leased or held for lease."

Here, the Court specifically found the harvester in question to constitute inventory held for retail sale. Thus, as this "mobile good" was held as inventory for *sale*, not lease, the Court misapplied § 9–103(3)(e) to its perfection upon removal across state lines. The correct subsection to be applied is § 9–103(1)(d), which is essentially the catch-all provision covering all collateral not governed by specific rules found in subsections (2), (3), (4), (5), and (6).

Utah Code Ann. § 70A–9–103(1)(d) states:

When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest,

(i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;

(ii) if the action is taken before the expiration of the period specified in subparagraph (i), the security interest continues perfected thereafter.

Borg Warner contends that this subsection should be interpreted to say that if the collateral is brought into this state subject to a perfected security interest, it remains perfected without further action. It claims that Section 9–103(1)(d)'s reference to Part 3 of the U.C.C. does not require the reperfection of collateral in the new state, but only deals with the initial perfection of collateral. A close look at § 9–103(1)(d), however, reveals this interpretation of the law to be erroneous.

The application of Utah Code Ann. § 70A–9–103(1)(d) is triggered "when collateral is brought into and kept in this state" while subject to a security interest

perfected in the state from which it was removed. Upon removal of the collateral into this state, this subsection states that "the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest," that action must be taken within four months after the collateral is removed or before the expiration of the period of perfection in the other jurisdiction, whichever occurs first. As with Section 9–103(3)(e), if the necessary action is not taken within the four months, then pursuant to Section 9–103(1)(d)(i), the security interest becomes unperfected and "is thereafter deemed to have been unperfected as against a person who became a purchaser after removal." Thus, just as with subsection (3)(e), inaction will result in the security interest becoming unperfected relating back to the date of removal. If the necessary action is taken, however, pursuant to Section 9–103(1)(d)(ii), perfection of the security interest will be continuous. The question then arises as to when action under Part 3, as specified in subsection (1)(d), is necessary to continue perfection of a security interest in removed collateral, and consequently, when does the four month grace period provided in subsections (1)(d)(i) and (ii) come into play.

The four month grace period referred to in § 9–103(1)(d) applies when "action is required by Part 3 of this Article to perfect the security interest." Referring back to Part 3 of Article 9 of the Uniform Commercial Code, enacted in this state in Utah Code Ann. § 70A–9–301 *et seq.*, its provisions specifically set forth the requirements necessary to perfect a security interest. By virtue of Utah Code Ann. § 70A–9–302, a financing statement must be filed in this state to perfect a security interest in goods such as the harvester here. Alternatively, a secured party of goods may perfect by possession under Section 70A–9–305, but as previously discussed, this situation is not present here. Since then, action by filing is required in this state to perfect a security interest in goods such as the harvester concerned, the four month grace period does apply, and unless that action is taken by

refiling within the four months, the security interest will become unperfected in this state as against the trustee, who is a "purchaser" under the Code and who took an interest in the collateral during the four month period. Thus, the effect of Section 9–103(1)(d) is essentially the same as Section 9–103(3)(e) except that the four month grace period is triggered by the removal of the *collateral* in subsection (1)(d) and by the change of the debtor's location under subsection (3)(e).

That this is the intended interpretation of Section 9–103(1)(d) is apparent from Official Comment 7 to Section 9–103 which states:

> In addition to the foregoing rules defining which jurisdiction governs perfection of a security interest in the first instance, "this state" (i. e., a destination state after removal) adds its own rules requiring reperfection following removal of collateral other than that described in subsections (2), (3), and (5). "This state" will for four months recognize perfection under the law of the jurisdiction from which the collateral came, unless the remaining period of effectiveness of the perfection in that jurisdiction was less than four months (paragraph (1)(d)). *After the four month period or the remaining period of effectiveness, whichever is shorter, the secured party must comply with perfection requirements in this state.* (Emphasis added.)

■ Thus, the fact that a security interest may be perfected in another jurisdiction does not guarantee its continual perfection in "this state", or the state to which the collateral was removed. Rather, it only guarantees that perfection will continue for a long enough period of time to protect the interests of a secured party until that party can comply with the perfection requirements, including filing, which are mandated by this state. As mentioned further on in the Comments to Section 9–103(1)(d):

> Paragraph (1)(d) proceeds on the theory that not only the secured party whose collateral has been removed but also creditors of and purchasers from the debtor "in this state" should be considered.

Thus, this provision, like Section 9–103(3)(e) is set up to balance the rights of secured creditors perfected in a previous state with the rights of innocent intervening third parties which may arise in this state.

■ Therefore, as action is required of Borg Warner under Part 3 of Article 9 as enacted in this state, Borg Warner must reperfect by filing within four months following removal of the collateral. As previously analyzed by the Court in its earlier opinion, since Borg Warner failed to take the necessary action to reperfect within the four month period, its interest became unperfected as of the date of removal. As the debtor-in-possession, and then the trustee, took as a "purchaser" under the Code within the four month grace period, their rights to the collateral ripened into a superior interest upon the failure of Borg Warner to act.

■ One last issue, which, although not raised directly, is certainly raised by implication in the course of the arguments made, is whether the filing of a suit for reclamation by Borg Warner within the four month grace period somehow tolled the running of that period so as to make refiling unnecessary to perfect its interest against the trustee. In addressing this issue, a close look at the provision of Article 9 of the Uniform Commercial Code, as adopted in Utah, and the Bankruptcy Act make it clear that no such tolling effect takes place.

As discussed in the Court's earlier memorandum decision, the automatic stay does not prevent the filing of a financing statement on a secured interest when the perfection of that interest relates back to before the filing in bankruptcy. This exception under the old Act is clearly codified in the new Code under 11 U.S.C. § 362(b)(3). Thus, the secured party is free to take the necessary action by filing to insure the continuing priority of its secured interest. With this in mind, it should be further noted that there is nothing in the Uniform Commercial Code, as enacted in Utah, which specifically tolls the Section 9–103(1)(d) four month grace period either

upon the institution of a suit over the collateral or upon the institution of insolvency proceedings involving the debtor. The fact that a suit in reclamation is instituted may give notice to the trustee or other party actually involved in the suit of the purported claim to perfection asserted by the secured party, but it provides no general notice to third parties of the claimed security interest, which is the whole policy behind requiring a centralized filing to perfect an interest. The filing of a suit in reclamation is neither the statutory nor functional equivalent of a filing within this state.

Utah Code Ann. § 70A–9–403(2) obviates the necessity of filing a continuation statement during the course of insolvency proceedings. A security interest, to come under the protection of that section, must first be perfected *by a filing in this state* for continuation of that perfection during the insolvency proceedings. Thus, it deals with the narrow issue of the necessity of continuation statements, or in otherwords, the period of effectiveness of a properly filed financing statement. It does not apply to extend the temporary grace periods given in § 9–103 and § 9–304(5) which allow perfection for a short period of time without filing in this state if filing is eventually accomplished within the set period. The fact that Section 9–403 specifically deals with the tolling of the necessity of filing continuation statements in insolvency proceedings makes the absence of any mention of such an extension for the temporary grace period allowed in Section 9–103 further indicative of the Code's intent not to extend such periods in insolvency proceedings. As previously noted, secured parties are given the opportunity under the bankruptcy laws to protect their temporary rights, and, unlike the *situation addressed* in Section 9–403(2) where a filing already exists in the state to give general notice to third parties. No such general protection via notice would be available upon the statutory or equitable extension of the Section 9–103 grace period. Therefore, as there exists no legal basis for the tolling of the Section 9–103 grace period, filing in this state was necessary within the four months

or the interest became, as here, unperfected.

Based upon this memorandum decision,

IT IS NOW ORDERED that the Court's previous conclusions of law be amended as herein laid out to correct its misapplication of the law and that the judgment as previously rendered be affirmed based upon this corrected analysis of the law. Plaintiff's motion to amend the judgment is therefore granted as heretofore set forth.