**In the Matter of B & L COAL COMPANY, INC., Debtor.**

**Robert O. LAMPL, Trustee, Plaintiff,**

v.

**GENERAL ELECTRIC CREDIT CORPORATION, Defendant.**

**Bankruptcy No. 79–821.**
**Adv. No. 80–93.**

United States Bankruptcy Court,
W. D. Pennsylvania.

June 1, 1982.

Robert O. Lampl, Pittsburgh, Pa., pro se for trustee, plaintiff.

Stephen J. Laidhold and Lampl, Sable & Makoroff, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT TO AVOID ALLEGED PREFERENTIAL TRANSFER

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge.

The corporate debtor, B & L Coal Company, was engaged in the business of strip mining coal prior to June 21, 1978 when it purchased four items of heavy equipment from the Beckwith Machinery Company under a security agreement providing for payment of the $905,452.80 purchase money in monthly installments. The security agreement was assigned the same day to the defendant, the General Electric Credit Corporation, and financing statements were filed in the offices of the Prothonotary of Butler County, Pennsylvania, June 23, 1979 and the Secretary of the Commonwealth of Pennsylvania, Harrisburg, Pennsylvania,

June 26, 1978. The within adversary proceeding was brought by the trustee in bankruptcy to avoid a preferential transfer alleged to have taken place when the defendant repossessed and sold the equipment for its agreed value of $144,500.00 within three months of the filing of the petition in voluntary bankruptcy. The question involved is whether the defendant's security interest perfected by the above filings in the Offices of the Secretary of the Commonwealth and the Prothonotary of Butler County pursuant to *Section 9401(a)(3) of the Pa. Uniform Commercial Code* was lost when the debtor transferred its principal office and place of business in Butler County to the Old Post Office Building in Rimersburg, Clarion County, Pennsylvania in January of 1979 without filing an additional notice in the Prothonotary's Office of the latter county within four months under *Section 9401(c)*.

The items of equipment subject to the above transaction, and their agreed values for which the defendant sold them within three months of the filing of the bankruptcy petition, are as follows:

| | |
|---|---|
| International Harvester Model TD8 | $ 14,500.00 |
| International Harvester Model 25C | 25,000.00 |
| Hough Model 560 Loader | 40,000.00 |
| Hough Model 400C Loader | 65,000.00 |
| TOTAL | $144,500.00 |

A financing statement was filed in the Prothonotary's Office of Clarion County August 24, 1978 in respect to the International Harvester Model TD8 valued at $14,500 which it is agreed perfected defendant's security interest therein and left at issue in this proceeding the remaining $130,000.00.*

Section 9401(a)(3) and (c) of the Pennsylvania Uniform Commercial Code are in part as follows:

"(a) Place of filing.—The proper place to file in order to perfect a security interest is as follows:

.    .    .    .    .    .

---

* It is also undisputed that International Harvester Model 25C valued at $25,000.00 remained in Butler County at all times until its repossession and sale, but as no further business was conducted in that county, the legal effect of this circumstance is not agreed to.

"(3) In all other cases, in the office of the Secretary of the Commonwealth and in addition, if the debtor has a place of business in only one county of this Commonwealth, also in the office of the prothonotary of such county, or, if the debtor has no place of business in this Commonwealth, but resides in the Commonwealth, also in the office of the prothonotary of the county in which he resides.

.    .    .    .    .    .

"(c) Effect of change in location of debtor or collateral.—A filing which is made in the proper county continues effective for four months after a change to another county of the residence of the debtor or place of business or the location of the collateral, whichever controlled the original filing. It becomes ineffective thereafter unless a copy of the financing statement signed by the secured party is filed in the new county within said period."

The plaintiff contends Butler was the only county in which the debtor had a place of business at the time the contract was entered into and that that place of business was moved to Clarion County in January of 1979. The defendant's position is that the Butler County office was consolidated with an existing place of business in Clarion County on the ground that at the time the involved transaction was entered into June 21, 1978, it had a place of business in Clarion County because its president and tax accountant resided there and it used a Rimersburg post office box address on its tax returns for their convenience, and also on an insurance policy, although its sole physical office in which it negotiated its contracts and transacted its business and in which it kept its desk, files, telephone and other office equipment was at that time in Butler County. If the Plaintiff's version that the debtor did business only in Butler County is correct, the lien was perfected by the filings in the state capital and in Butler County. If it did business in both Butler and Clarion when the contract was signed, the central filing was sufficient and the Butler County filing surplusage.

William L. Yates, Company Vice President, testified on page 16 of the transcript that from June 19, 1978 until January of 1979 the debtor maintained its place of business at Oneida Road in Butler County, that it met there with its sales people, kept its typewriter, files and financial records there and that that was its business mailing address; that during the time the B & L Coal Company had its office at 135 Oneida Road in Butler County, it had no other place of business.

■ The testimony of Martin Bujaky, the company's certified public accountant who prepared its tax returns, is that:

(page 38) "We used a post office box in Rimersburg for the convenience of the president of the corporation, who was Larry Yates. The State and Federal government at that point in time had the mailing address recorded at Larry's post office box. And for the convenience of not having to move the mailing address for the Federal Tax Return purpose, we never changed the post office box itself. That was my decision . . . .

(page 40) "What I said was that the address we use is P.O. Box 70 of the corporation. They, nowhere on the tax return, ask where the corporation is doing business from. They ask on there for a mailing address for the corporation. I have already testified that I chose to use P.O. Box 70 because Larry Yates, as President, that is his post office box."

We conclude from the above testimony that the debtor had a single place of business when the contract was signed and that that place of business was moved to Rimersburg in Clarion County in January of 1979, but whether it transacted its business in multiple offices or a single office at the inception of the transaction is of no consequence, as in either event the question is the same: Was the defendant's original validly perfected security interest lost by its failure to refile notice thereof in Clarion County within four months of January of 1979?

■ We agree with the rationale of *In re McQuaide*, 5 UCC Rep. 802 (DC Vt. 1968) that a merchant does not have two places of business within the meaning of *Section 9–401(1)(c) of the Vermont UCC* because in addition to his regular place of business in the Town of Rockingham he used his home in the Town of Westminster for certain office work with which his wife assisted him; that the Code, in using the term "place of business" refers to a place where customers and creditors would normally communicate with the debtor for purposes of trade, and the work the debtor did at his home did not constitute it a place of business.

The amount involved when the equipment forming the subject matter of this transaction was purchased was $905,452.80, and it must be assumed that a creditor advancing funds for the financing of transactions of such magnitude made or should have made a complete investigation of the circumstances and manner of doing business of the debtor. Moreover, the defendant obtained an additional financing statement and filed it in Clearfield County August 24, 1978 in respect to International Harvester Model TD8 without making further filings in respect to the other items, but no testimony was offered to explain this filing or why it did not make similar filings in respect to the other items. The fact remains that it is a fair inference it had some kind of information that the debtor was contemplating the moving of its place of business to that location or was in the process of such removal at the time of such filing; but why, if it had this information, did it not also file in respect to the other more valuable items?

In *In re P. S. Products Corp.*, 435 F.2d 781, 7 UCC Rep. 411 (2nd Cir. 1970) it is held that questions of multiple filings are determined by the place where the debtor's business is actually conducted, not the address set forth in its certificate of incorporation or that of its law firm designated as an agent to accept service of process, and in *In re B. & B. Concrete, Inc.*, 9 UCC Rep. 936 (DC Vt. 1971) that the place to which the equipment acquired from the creditor was shipped and where the debtor's personal property and business phone was maintained and work done constituted its sole place of business notwithstanding the fact that its letterheads and sales contracts listed the address of its president as its address for his convenience.

■ The purpose of the filing requirements of the Uniform Commercial Code is to furnish prospective purchasers and creditors with information relating to the encumbered status of and liens against a debtor's assets, and not just to create a hodge-podge of technicalities for noncompliance with which existing rights will be lost. Thus, the filings must be made in accordance with the facts of the actual location of the debtor's place of business, or when applicable, (his) residence, not just on the mailing or other addresses stated on its invoices, checks, tax returns and other documents for the convenience of its officers and accountants. It is uniformly held that the filing requirements on the moving of a debtor's residence or place of business from one location to another and the consequences of termination of security interests for noncompliance therewith are mandatory and enforceable whether or not existing creditors were notified or had knowledge thereof: *In re Armstrong*, 7 UCC Rep. 781 (Bkrtcy. WD Okl. 1970) holding that a secured creditor is under a continuing duty to keep advised of the location of the debtor's residence, and *In re Golden Kernel, Inc.*, 5 UCC Rep. 43 (Bkrtcy. ED Pa. 1968) that when a debtor consolidates its place of business in two counties to only one county a lien creditor must acquaint himself with the necessary operative facts and satisfy minimal filing requirements before relying on the sufficiency of a central filing to continue the validity of his lien. In the instant situation a prospective lender or purchaser who examined the secured transaction indices in the Prothonotary's Office of Clarion County four months after the removal of the debtor's place of business to that county would find no record of General Electric Credit's lien as it was not filed therein, and if, as we conclude, Clarion County was the

only county in the Commonwealth in which the debtor then had a place of business, he should be entitled to rely on the nonexistence of said lien and the repossession is avoidable by the trustee under *Section 547(b)(5)(B)*.

We conclude that the debtor had but one place of business, 135 Oneida Road, Butler, Butler County, Pennsylvania until January of 1979 when it moved said place of business to Rimersburg in Clarion County, Pennsylvania, and that the security interest of the defendant in the subject equipment terminated and became null and void four months thereafter because no notice of the new place of business was filed in Clarion County within that period as required by the provisions of *Section 9401(c) of the Pa. Uniform Commercial Code* for the continued viability of said lien; that the defendant's subsequent repossession and sale of the subject equipment constituted a preferential transfer avoidable by the trustee in the sum of $130,000.00 and applicable interest thereon; and that an appropriate Order for judgment in favor of the plaintiff and against the defendant in said amount will be entered on Plaintiff's filing of a proper motion therefor.

