In re NARDULLI & SONS CO., INC., Debtor.

GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff,

v.

NARDULLI & SONS CO., INC. and Carlotta Bohm, Trustee, Defendants.

Bankruptcy No. 80–1723.
Adv. No. 86–0102.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 19, 1986.

Stanley G. Makoroff, Mary Anne McKeen, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for plaintiff.

Carlota M. Böhm, Schaffler & Böhm, Pittsburgh, Pa., Trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

In January, 1986, the Plaintiff, General Electric Credit Corporation ("GECC") filed a Complaint for Reclamation of Property, Adequate Protection and/or Relief from Stay of the Debtor's six pieces of heavy equipment. The Trustee denies that GECC has a security interest in the equipment first because the confirmation of the Chapter 11 plan did not provide for a retention of such a security interest, and alternatively because after confirmation of the plan GECC did not maintain its perfected security interest under state law.

## FINDINGS OF FACT

On October 22, 1980, the Debtor, a strip mining operator, filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On November 29, 1983, the Court confirmed the Debtor's Chapter 11 Plan. The plan was consummated by payment of administrative expenses and by substantial payments to creditors. Taxes were not paid. On January 8, 1986, on motion of the taxing bodies; the case was converted to a Chapter 7 and a Trustee appointed.

On October 24, 1979, the Debtor, Nardulli & Sons Co., Inc. ("Nardulli"), entered into a security agreement and promissory note with GECC under which GECC loaned the Debtor $482,749.72. With this transaction, Nardulli granted GECC a security interest in five pieces of equipment:

1977 Caterpillar Crawler Dozer, Model D-9H, Serial No. 90V5012

1976 Caterpillar Crawler Dozer, Model D-9, Serial No. 90V2242

1975 Caterpillar Wheel Loader, Model 992, Serial No. 25K1590

1974 Caterpillar Wheel Loader, Model 988, Serial No. 87A8149

1978 Cardinal Portable Truck Scale, Serial No. 35640

GECC originally perfected its security interest in the five pieces of equipment by filing financing statements on October 29, 1979 with the Secretary of the Commonwealth of Pennsylvania and with the Prothonotary of Allegheny County. GECC also filed continuation statements on April 23, 1984 with the Secretary of the Commonwealth and with the Prothonotary of Allegheny County.

By Order of Court dated July 28, 1981, the Bankruptcy Court approved a Stipulation between the Debtor and GECC, that affirmed GECC's security interest in the five pieces of equipment, and also authorized the Debtor to grant GECC a security interest in a 1972 Caterpillar Wheel Loader, Model No. 992, Serial No. 25K665. GECC perfected its security interest in the sixth piece of equipment by filing a financing statement with the Secretary of the Commonwealth of Pennsylvania on September 11, 1981 and with the Prothonotary of Allegheny County on September 10, 1981.

Article 1, Part A, Paragraph 1 of the plan only states:

General Electric Credit Corporation ("GECC"), secured by assets of Debtors shall be designated as the sole Class 1 claimant.

Although the plan provides a payment schedule to GECC, the plan does not expressly provide that GECC retains any security interest in the six pieces of equipment.

Nardulli's plan of reorganization provides that the Bankruptcy Court will retain jurisdiction after consummation date of the plan for all purposes until the Class 13 claimants, the unsecured creditors, are paid as provided under the plan. The plan provides that the consummation date is 30 days after the Order of Court confirming the plan becomes final and nonappealable. On November 29, 1983, the Court confirmed the plan and thus consummation would have occurred on December 29, 1983. Nardulli's Disclosure Statement, filed in August, 1983, discloses that Nardulli obtained a contract to mine coal in the state of Indiana and that it would start operations there once it obtained the required Indiana permits.

In support of its Complaint, GECC filed an affidavit from Nardulli that is not disputed. It recites that Nardulli maintained a place of business at 947 Butler Street, Etna, Allegheny County until October, 1983, when it closed its Allegheny County office. Nardulli had also maintained a place of business in Washington County until June, 1984. Nardulli opened a place of business in Butler County in March, 1982 and closed it in January, 1986. Thus, the only place of business Nardulli maintained from June, 1984 until January, 1986 was in Butler County. Nardulli originally owed GECC $482,749.72. GECC now claims $84,246.56 plus legal fees and court costs.

Debtor's affidavit states that in March, 1984, Nardulli moved two Caterpillar dozers, two wheel loaders and the truck scale to the state of Indiana, where they remain. This heavy equipment is being used in strip mining operations. Earlier in March, 1983, Nardulli moved two Caterpillar dozers to Butler County, Pennsylvania. After the plan was confirmed, Nardulli leased the Indiana equipment to an Indiana corporation, Whole Nine Yards Coal Company, Inc. ("WNY"). According to the lease, this equipment was repaired by WNY which also placed an Indiana artisan's lien on the equipment. On June 11, 1986, the Trustee conducted a bidding sale of this equipment. WNY was the highest bidder. The Trustee sold the equipment for $250,000. Payments were to be made in installments. GECC has appealed this sale to the District Court. The Butler County equipment remains unsold

Additionally, WNY has filed for bankruptcy in the state of Indiana and has listed this artisan's lien as an asset. WNY filed after the conversion date of Nardulli to Chapter 7.

## CONCLUSIONS OF LAW

### A. Confirmation of Plan Vests All the Property of the Estate in the Debtor

The Court confirmed Nardulli's plan of reorganization on November 29, 1983. Section 1141(a) of the Bankruptcy Code provides upon confirmation that the debtor and all creditors are bound by the plan, whether or not the individual creditors have accepted the plan or have claims which are impaired under Section 1141. *In re White Farm Equipment*, 38 B.R. 718 (N.D.Ohio E.D.1984). GECC accepted the plan. Furthermore, Section 1141(b) provides that:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

■ Section 1141(c) of the Code provides that after confirmation of the plan, *except as provided in the plan or in the order confirming the plan,* the property dealt with by the plan is free and clear of all claims and interests of creditors of the debtor. See *U.S. v. Redmond,* 36 B.R. 932, 934 (D.Kan.1984). The reorganization plan affects all creditors and their security interest. All their rights are defined and limited by the plan. Since the plan does not provide that GECC will retain a security interest until payment of the GECC debt, the property held by Nardulli upon confirmation is free and clear of GECC's security interests.

■ After confirmation, unless the plan provides otherwise, the Debtor is free to use its unsecured equipment as security for future loans. Future lenders are permitted to rely on the plan and the filing and notice provisions of § 9401 and § 9302(a) of the Pennsylvania Uniform Commercial Code (see *infra*) to determine if the property is collateral to perfected security interests. In this case, the Debtor leased the equipment to WNY.

Except as provided in the plan, confirmation of the debtor's plan also discharges the debtor from any debt that arose before the confirmation date. 11 U.S.C. § 1141(d)(1).

In *Matter of Wood,* 47 B.R. 774, 778 (Bkrtcy.W.D.Wis.1985), the Bankruptcy Court noted that:

> Creditors have the opportunity to protect their interests by the requirement of continued ownership of the cows [property of Wood's estate] when they voted to confirm it. At the time the plan was confirmed, it was apparent that Wood's dairy operations were somewhat unstable, but no provisions were included in the plan to deal with his dairy herd. With the exercise of reasonable foresight, the creditors who negotiated with Wood could have sought the inclusion of provisions restraining the sale of the cows and any other necessary assets.

In *Wood,* the creditors' failure to protect themselves in the plan resulted in the debtor's cows being free and clear of all claims and interests of the debtor's creditors. *Id.* at 780. Under the terms of Nardulli's confirmed plan, and 11 U.S.C. § 1141, the

Debtor takes free of GECC's security interests in these six pieces of equipment.

## B. After Confirmation of Plan, Continuing Perfection of GECC's Security Interest is Required by State Law

Alternatively, GECC could have argued that the plan's failure to expressly provide its security interest in the plan was an oversight. It did not so argue. The Court would not be easily persuaded by such an experienced creditor that inadvertence was the cause of failure to expressly include a retention of a security interest or that the parties intended to include such an interest. However, if the plan is so interpreted, then post-confirmation GECC must comply with perfection requirements under the Uniform Commercial Code of Pennsylvania and Indiana.

GECC filed its financing statements with the Prothonotary of Allegheny County and with the Pennsylvania Secretary of State for five pieces of equipment on October 29, 1979. The bankruptcy petition was filed on October 20, 1980. The plan was confirmed on November 29, 1983. Continuation statements were filed for these five pieces on April 23, 1984 in Allegheny County. GECC filed its financing statement for the sixth piece of equipment with the Secretary of the Commonwealth on September 4, 1981 and with the Prothonotary of Allegheny County on September 10, 1981.

Nardulli closed its Allegheny County place of business in October, 1983 and closed its Washington County place of business in June, 1984. The Debtor opened a place of business in Butler County in March, 1982 and closed it in January, 1986. Nardulli moved two pieces of equipment to Butler County, Pennsylvania in March, 1983. In March, 1984, Nardulli moved four pieces of equipment to the state of Indiana. The Debtor's Disclosure Statement filed on August 23, 1983 indicates that the Debtor might commence mining operations in Indiana and presumably that some of the Debtor's equipment might be used in the state of Indiana.

GECC filed its continuation statement in Allegheny County on *April 23, 1984*, while the Debtor's only place of business from *June, 1984 to January, 1986* was in Butler County.

## 1. Perfection of Security After Confirmation of a Plan Under Section 9403(b) of Pennsylvania's Uniform Commercial Code

Under the Pennsylvania UCC, a financing statement filed by a secured party is effective for five years or less. 13 Pa.C.S.A. § 9403(b). To maintain the effectiveness of a financing statement, a continuation statement must be filed within six months prior to the expiration of the five-year period. 13 Pa.C.S.A. § 9401(c). However, a secured party need not file a continuation statement when the debtor is in bankruptcy. 13 Pa.C.S.A. § 9403(b) provides in part:

> If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of 60 days or until expiration of the five-year period, whichever occurs later.* * * *

In a Chapter 11 reorganization, "termination" occurs on the confirmation date of a Chapter 11 plan, 11 U.S.C. § 1141(a) (or on the effective date or consummation date of the plan if so provided in the plan). In the instant case, Nardulli's plan provides for consummation 30 days after the order of confirmation, or on December 29, 1983. The confirmation date, or consummation date as the plan's effective date if applicable, is a critical date under Chapter 11. Unless otherwise provided in the plan or the order confirming the plan, confirmation discharges the debtor from any debt that arose before the date of confirmation. 11 U.S.C. § 1141(d)(1)(A). Discharge upon confirmation has a broad effect. For example, discharge renders the automatic stay ineffective under Section 362(c)(2)(C)

of the Bankruptcy Code. 11 U.S.C. § 362(c)(2) provides:

> (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
>
> (A) the time the case is closed;
>
> (B) the time the case is dismissed; or
>
> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, or 13 of this title, the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2).

See *In re Paradise Valley Country Club*, 31 B.R. 613, 614 (D.Colo.1983) affirming the Bankruptcy Court, *In re Paradise Valley Country Club*, 26 B.R. 990 (Bkrtcy.D. Colo.1983); *In re Westhold Manufacturing, Inc.*, 20 B.R. 368, 372 (Bkrtcy.Kan. 1982). GECC was free of the automatic stay and should have continued its financing statement or filed a new one.

■ GECC argues that Nardulli's plan provides that the Court will retain jurisdiction of the case after consummation for all purposes until the Class 13 claimants (the unsecured claimants) are paid under the plan. Retention of jurisdiction by the Court to resolve disputes does not reimpose the automatic stay. This retention of jurisdiction does not imply that creditors retain their pre-confirmation security interest in property that vested in the debtor upon consummation of the plan or that it lapsed for failure to maintain perfection. Upon conversion of this case, the debtor's property as of the date of conversion becomes part of the estate. 11 U.S.C. § 348.

Even if the plan had provided for a retention of GECC's security interest, under state law "termination" of the Nardulli bankruptcy case occurred on December 29, 1983, and GECC would have remained perfected for 60 days thereafter. 13 Pa.C.S.A. § 9403(b). Additionally, the automatic stay is lifted. GECC was free to comply with the filing requirements for financing statements under § 9401 of the Pennsylvania UCC to remain perfected.

■ The continuation of perfection of a security interest during an insolvency proceeding is provided by 13 Pa.C.S.A. § 9403(b); however, that section does not alter the filing requirements when the debtor changes its only place of business to another county or when the debtor moves certain collateral to another state. See "Official UCC Reasons for 1972 Changes" following 13 Pa.C.S.A. § 9403 and *In re Utah Agricorp, Inc.*, 12 B.R. 573 (Bkrtcy. D.Utah 1981). GECC was required to file in Butler County. Instead, it continued its filing in Allegheny County.

■ A secured creditor is under a continuing duty to keep advised of the location of the debtor's place of business to maintain perfection of its security agreements. *In re Golden Kernel, Inc.*, 5 UCC Rep. 43, 47 (Bkrtcy.E.D.Pa.1968). When the debtor moves its only place of business from one county to another, refiling is mandatory. The consequences of termination of security interests for noncompliance are enforceable whether or not existing creditors were notified or had knowledge thereof. *Lampl v. General Electric Credit Corp. (Matter of B&L Coal Co., Inc.)*, 20 B.R. 864 (Bkrtcy.W.D.Pa.1982); aff'd Civil Action No. 82–1839 (W.D.Pa.1982).

### 2. Equipment Located in Butler County, Pennsylvania

The Debtor moved two pieces of equipment to Butler County, Pennsylvania in March, 1983. Earlier in March, 1982, Nardulli established a place of business in Butler County. If confirmation of the plan did not divest GECC of its security interest in the equipment, in order for GECC to stay perfected, it must comply with filing requirements under 13 Pa.C.S.A. § 9401. This statute requires the secured party to file the financing statement with the Secretary of the Commonwealth and with the Prothonotary of the county where the debtor has a place of business when the debtor has one place of business. This filing remains effective for four months after the debtor's place of business changes. 13 Pa. C.S.A. § 9401(c). The filing becomes ineffective four months after the debtor moves its only place of business to another county

unless a copy of the financing statement, signed by the secured party, is filed in the new county within the four month period. *Id.* After the expiration of the four month period, the creditor may perfect its security interest in the new county with a new filing there, but the perfection dates from the time of the new filing. *Id.*

■ Nardulli closed its place of business in Allegheny County in October 1983. Nardulli's Washington County office closed in June, 1984. Its Butler County office opened in March, 1982 and closed in January, 1986. GECC filed a continuation statement in Allegheny County in 1984. GECC did not file any financing statements in Butler County. Pennsylvania requires that a secured party must properly file a financing statement in order to perfect its security interest in the collateral. 13 Pa.C.S.A. § 9302(a). After Nardulli closed its Allegheny County and Washington County offices, the Butler office remained as Nardulli's only place of business in June, 1984. Thus GECC failed to perfect its security interest in the two pieces of equipment. GECC was required to file financing statements in Butler County by October, 1984, four months after the Washington County office closed in June, 1984, in order to maintain its perfected security interests. 13 Pa.C.S.A. § 9401(c), § 9401(a)(3).

In both *In re Video East, Inc.*, 41 B.R. 176, 180 (Bkrtcy.E.D.Pa.1984) and *Lampl v. General Electric Credit Corp. (Matter of B&L Coal Co., Inc.)*, 20 B.R. 864, 867 (Brktcy.W.D.Pa.1982), aff'd Civil Action No. 82–7839 (W.D.Pa.1982), the secured parties lost their perfected status when the debtor moved its only place of business to another county and the secured party failed to file the financing statement in the new county. "The purpose of the filing requirements of the Uniform Commercial Code is to provide prospective purchasers and creditors with information relating to the encumbered status of and liens against a debtor's assets.... Thus, the filings must be made in accordance with the facts of the actual location of the debtor's place of business...." *Id.* at 867. A secured

creditor is under a continuing duty to keep advised of the location of the debtor's place of business in order to maintain the validity of perfected security interest. Thus, even if Nardulli's confirmed plan maintained GECC's perfected security interest in the equipment, after the debtor closed its Allegheny and Washington County offices, GECC lost its perfected status in the two pieces of equipment by not filing in Butler County. As a hypothetical lien creditor, on the date of conversion, the Trustee defeats all unperfected security interest in the Butler County equipment. 11 U.S.C. § 544.

### 3. Equipment Located in the State of Indiana

#### a. Equipment Not "Mobile Goods", Indiana Law Applies

Nardulli moved four pieces of equipment to the state of Indiana in March, 1984, where it leased the equipment to an Indiana corporation, WNY. WNY repaired the equipment and has claimed an artisan's lien. This large and heavy equipment is used for strip mining. The Court does not believe the equipment qualifies as mobile goods under section 9103(c) of the Pennsylvania UCC. See *infra*.

Section 9103(a)(2) of the Pennsylvania UCC provides the conflicts rule on perfection of security interests for goods used in multiple state transactions:

> Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the *last event occurs* on which is based the assertion that the security interest is perfected or unperfected. 13 Pa.C.S.A. § 9103(a)(2). (Emphasis added)

The Comments to the 1972 amendments to the Uniform Commercial Code explain this "last event rule" as follows:

> The general rule (paragraph (1)(b)) [13 Pa.C.S.A. § 9103(a)(2)] is that these questions are governed by the law of the jurisdiction where the collateral is when

the last event occurs on which is based the assertion that the security interest is perfected or unperfected. This event will frequently be the filing. If the last event is not filing and perfection is through filing, the filing required is in the jurisdiction where the collateral is when the last event occurs; proper filing in another jurisdiction is not effective and is not saved by the four-month rule discussed below, which applies only when the security interest was perfected in the jurisdiction from which the collateral was removed. If the security interest was perfected in one jurisdiction and then removed to another jurisdiction, maintenance of perfection in the latter jurisdiction or failure to do so is the "last event" to which the basic rule refers.

Here the last event is the conversion of the case on January 8, 1986. Since the collateral is located in Indiana, the Court must examine the relevant provisions of the Indiana UCC to determine if GECC has maintained its perfected status.

The Indiana provision on perfection of security interests in multiple state transactions, Indiana Code § 26–1–9–103(3), states:

(3) If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within thirty (30) days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state. *If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security in-*

*terest continues perfected in this state for four [4] months and also thereafter if within the four-month period it is perfected in this state.* [Emphasis added] The security interest may also be perfected in this state after the expiration of the four-month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state.

Indiana (as Pennsylvania) requires that a secured party must file a financing statement in order to perfect its security interests in the collateral. Ind.Code § 26–1–9–302(1). GECC did not file in Indiana and thus it lost its perfected status in July, 1984, four months after Nardulli moved four pieces of equipment to Indiana in March, 1984.

In *In re Dennis Mitchell Industries, Inc.*, 419 F.2d 349 (3d Cir.1969), the Court of Appeals for the Third Circuit held that a secured party's failure to file a financing statement in New Jersey, as required under the UCC, rendered its security interest unperfected, even if the secured party had originally perfected its security interest in Pennsylvania. The unsecured party was thus subordinated to the rights of the Trustee in bankruptcy. The secured party had filed a financing statement in Pennsylvania where the debtor had its principal place of business. However, the creditor did not file a financing statement in New Jersey after the debtor moved the collateral from New York to New Jersey. The Trustee's status as an ideal lien creditor under Section 70(c) of the Bankruptcy Act enabled him to sell the collateral at a bankruptcy sale free of the unperfected security interest. *Id.* at 354, 359–360.

The Court of Appeals emphasized that courts should establish and maintain the certainty in commercial transactions which

the UCC sought to achieve. *Id.* at 357, n. 25. See also *In re Scholl*, 6 UCC Rep. 1116, 1118 (W.D.Wis.1969). In *Dennis Mitchell Industries,* the Court of Appeals noted the "clear intent expressed in § 9–103(3) [same exact language as Indiana Code § 26–1–9–103(3)] that the secured party is under a duty to keep himself informed of his debtor's dealings with the collateral." *Id.* at 358. The requirement for the secured party to file within four months after the collateral is removed to another state "begins to run whether or not the secured party has notice that the collateral has been removed to another jurisdiction." *Id.*

The Bankruptcy Court in *In re Video East, Inc.,* 41 B.R. 176 (Bkrtcy.E.D.Pa. 1984), held that the secured party lost its perfected security interest four months after the collateral was moved from New Jersey to Pennsylvania. The secured party failed to properly file under Pennsylvania law. See *In re Utah Agricorp, Inc.,* 12 B.R. 573 (Brktcy.D.Utah 1981) (Section 9403(b) does not eliminate the filing requirements of Section 9103 when collateral is removed to a new jurisdiction and the secured party fails to file there within four months.) In *In re Foland and Company, Inc.,* 55 B.R. 593, 595 (Bkrtcy.E.D.Pa.1985), the secured party became unperfected four months after the collateral was moved from Pennsylvania to New Jersey and the secured party did not file a financing statement in New Jersey. The secured party had no knowledge that its collateral was being transferred to another state. In the instant case, GECC had notice that Nardulli might move some of GECC's secured equipment to Indiana. Nardulli's Disclosure Statement declares that the Debtor obtained a contract to mine coal in Indiana and that it would commence operations there once permits were issued by the state.

### b. Equipment as "Mobile Goods", Then Pennsylvania Law Applies

■ Nardulli moved the following equipment secured by GECC to Indiana: a Caterpillar dozer, two wheel loaders and a truck scale. When the debtor moves secured property interstate, the Pennsylvania UCC defines "mobile goods" to be:

Goods which are mobile and which are of the type normally used in more than one jurisdiction, such as motor vehicles, trailers, rolling stock, airplanes, shipping containers, road building and construction machinery, and the like, if the goods are equipment or are inventory leased or held for lease by the debtor to others and are not covered by a certificate of title described in subsection (b). 13 Pa.C.S.A. § 9103(c)(1).

The Court does not believe that Nardulli's equipment is normally used in more than one jurisdiction because it was used for strip mining. However, similar equipment might be used for road building and construction, and thus might qualify as "mobile goods" under Section 9103(c)(1).

Section 9103(c)(2) of the Pennsylvania UCC provides that in the case of "mobile goods", the law of the jurisdiction in which the debtor is located governs the perfection and effect of perfection or nonperfection of the security interest. Under Section 9103(c)(4), the debtor is deemed to be located at his place of business, if he has one, as its chief place of business, otherwise at its residence. Although "chief executive office" is not defined in the UCC, "it means the place from which in fact the debtor manages the main part of his business operations. This is the place where persons dealing with the debtor would normally look for credit information, and is the appropriate place for filing." Uniform Commercial Code Comment-1972, Paragraph 5(c). Nardulli closed its Butler County place of business, its last "chief executive office", in January, 1986. No filing occurred in Butler County.

■ For the purposes of this subsection on mobile goods, Pennsylvania would be the logical jurisdiction to govern the determination of perfection, since the Debtor had its last chief executive office in this state. The rule stated in Section 9103(c)(5) applies only when the debtor has changed

its place of business to another jurisdiction. This section is not applicable to this case. If the equipment qualifies as mobile goods, then GECC became unperfected in October, 1984 for the Indiana equipment when Nardulli established a single place of business in Butler County and GECC failed to file any financing statement with the Prothonotary of that county. 13 Pa.C.S.A. § 9401(a)(3); see *supra* for discussion of filing requirements. Thus, whether the equipment does or does not qualify as mobile goods under the UCC, the Trustee as a hypothetical lien creditor would possess rights in the equipment superior to GECC's unperfected security interest in the equipment. 11 U.S.C. § 544.

GECC relies on *In re Bob Schwermer & Associates, Inc.*, 27 B.R. 304 (Bkrtcy N.D. Ill.E.D.1983). This case is not applicable. In *Schwermer*, the secured creditor perfected its security interest by filing financing statements in Illinois, and the collateral was located in Illinois prior to the filing of the Chapter 11 proceedings. Contrary to GECC's statement of the facts in its brief, the collateral was removed to two other states *prior* to the Chapter 11 filing, not afterwards. No intervening security interests attached to the collateral while it was out of Illinois. The *Schwermer* opinion does not indicate whether any plan was confirmed. Confirmation of a plan is a key fact in this analysis because confirmation of a plan changes the rights of the parties. Here, a plan was confirmed and the collateral was removed to Butler County and the state of Indiana. GECC did not file financing statements in Butler County or in the state of Indiana.

GECC also relies on *Matter of Funding System Asset Management Corp.*, 38 B.R. 351 (Bkrtcy W.D.Pa.1984), where the Court held that if a financing statement expires after the filing of the debtor's bankruptcy petition, the creditor need not file a continuation statement to maintain its perfected security interest. *Funding System* did not involve the confirmation of any plan. In addition, the financing statements were properly filed in *Funding System*.

## C. Conversion of Case from Chapter 11 with a Confirmed Plan to Chapter 7 Does Not Vacate Consummated Orders

GECC also relies on 11 U.S.C. § 348, which provides that a conversion of a case does not effect a change in the date of filing the petition, the commencement of the case or the order for relief. 11 U.S.C. § 348(a).

GECC relies upon 11 U.S.C. § 348 because on the original filing date, GECC was perfected. In support of this position, GECC cites *Lockhart v. Garden City Bank & Trust Company*, 116 F.2d 658 (2d Cir.1940), as authority that in a Chapter 11 the filing date is a critical time to determine the status of a secured creditor's claim and that the failure of the secured creditor to continue or refile as required under state law did not render the creditor's claim unperfected as against the Trustee. In *Lockhart*, the Court of Appeals for the Second Circuit determined that the Trustee's rights were subordinated to those of a secured creditor, even though the creditor failed to continue the perfection of a chattel mortgage after the bankruptcy petition commenced. *Lockhart* involved the rights of a secured creditor and Trustee in a Chapter XI arrangement under the Bankruptcy Act. Section 356 of the former Bankruptcy Act authorized a Chapter XI arrangement to modify or alter the rights of unsecured creditors, but *not the rights of secured creditors*. "No provision of the Bankruptcy Act permits a plan proposed under Chapter XI to deal with the rights of secured creditors...." 9 Collier on Bankruptcy, ¶ 8.01[3] at 168 (14th ed. 1978). Thus, a Chapter XI plan in *Lockhart* could not have vested the property in the debtor free of the creditor's claim in the collateral. In contrast, the 1978 Bankruptcy Code vests property in the debtor and permits a Chapter 11 plan of reorganization to modify the rights of a secured party, and that has occurred in this case. 11 U.S.C. § 1123(b)(1). Reliance on *Lockhart* which deals with an Act case under a Chapter XI is misplaced.

■ After confirmation of Nardulli's Chapter 11 plan, 11 U.S.C. § 1141 vests title in the Debtor. GECC lost its perfected security interest, either because the plan did not retain such security interest, or because GECC failed to file new financing statements to maintain perfection. See *supra*. After confirmation of a plan, the Trustee's rights as a hypothetical lien creditor accrue as of the date of conversion. Section 348 does not imply the revocation of the confirmation order or any other valid order. After a confirmation, the conversion of a case does not revoke valid consummated orders. Section 348 affects only property of the estate not dealt with during the administration of the case. For example, if no plan is confirmed, and if other orders have not dealt with the property, and the Chapter 11 is converted, then the status of the property on the date of filing is controlling.

In *Matter of Ford*, 61 B.R. 913 (Brktcy. W.D.Wis.1986), where a Chapter 11 converted to a Chapter 7, the Bankruptcy Court ruled that since all of the pre-confirmation property revested in the debtor, the Trustee could not avoid any transfers which occurred after confirmation. *Id.* at 917. For example, the Trustee could not avoid any payments made by the debtor under a confirmed plan, even if they were made from property of the estate. *Id.* at 918. Section 348 cannot be read to provide that upon conversion, a case is to be treated in all respects as if it has originally been filed under the chapter to which it has been converted. The Court emphasized that when a Chapter 11 converted to a Chapter 7 following the failure of a confirmed plan, this does not "result in the nullification of all actions by the parties or orders of the court which occurred during the pendency of the unsuccessful plan." *Id.* at 917–918.

■ A confirmed plan which has been consummated becomes the law of the case. Absent fraud, parties must be able to rely on the confirmed plan. *In re Kaleidoscope of High Point, Inc.*, 56 B.R. 562, 565–566 (Bkrtcy.M.D.N.C.1986) (funds paid for professional fees and to creditors under reorganization plan could not be recaptured upon conversion of case to Chapter 7).

■ If a Trustee were required to undo valid orders, a confirmed Chapter 11 debtor would be stillborn on the confirmation date. No future creditor would lend money to the Debtor. The creditors would fear that prepetition security interests could be resurrected. Post-confirmation creditors would not have proper notice of these pre-confirmation security interests. When GECC did not maintain its perfected security interests, GECC's previously perfected security interests are not revived by conversion.

## CONCLUSION

Upon consummation of Nardulli's plan of reorganization, except as provided in the plan, all legal interest in the six pieces of equipment vested in the Debtor. 11 U.S.C. § 1141. The plan did not provide for GECC maintaining its security interest in the equipment.

Alternatively, if the Debtor and GECC intended that GECC retain its security interest, but failed to so provide through inadvertance, then GECC must comply with the filing requirements under the Uniform Commercial Code of Indiana and Pennsylvania to remain perfected. GECC failed to file financing statements in the state of Indiana and Butler County, Pennsylvania. Thus, GECC's security interests became unperfected. Upon conversion, the Trustee has a superior interest as a hypothetical lien creditor under Section 544 of the Bankruptcy Code.

The creditor's reliance on 11 U.S.C. § 348 is misplaced. This section does not avoid or vacate other valid orders which have been consummated. The Court denies GECC the relief that it requests in its Complaint.

An appropriate Order will issue.