**In the matter of Kenneth Wayne FRIEZE and Joyce Janet Frieze, Debtors.**

**CITIZENS STATE BANK OF NEVADA, MISSOURI, Plaintiff,**

v.

**UNITED STATES of America, Kenneth Wayne Frieze, Joyce Janet Frieze, Ronald C. Culbertson, Holcomb Grain Company, and L.J.R.K. Partnership, Defendants.**

**Bankruptcy No. 82–00720–SW–11.**
**Adv. No. 83–0577–SW–11.**

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Aug. 3, 1983.

Gerald D. McBeth, Ewing, Carter, McBeth, Smith, Gosnell, Vickers & Hoberrock, Nevada, Mo., for plaintiff.

Robert G. Ulrich, U.S. Atty., Kansas City, Mo., for the U. S.

James F.B. Daniels, Joplin, Mo., for Frieze.

R. Deryl Edwards, Joplin, Mo., for Culbertson.

Nicholas L. Swischer, Nevada, Mo., for Holcomb Grain.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT FOR THE UNITED STATES OF AMERICA**

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff Citizens State Bank of Nevada, Missouri, filed its complaint in this action on April 20, 1983, seeking to have its claim of a security interest on some $9,088.94 in proceeds of beans declared superior to the claims of the other parties in it. In the complaint, it was alleged that "Defendant Ronald Culbertson delivered to Defendant Holcomb Grain a quantity of beans and sold them for the sum of $9,088.94"; that "Defendant Holcomb Grain

Company is apparently in doubt as to whom the sale money should be paid and is unwilling to pay over to any party until such priority is determined"; that, in a prior adversary action, this court "had by its order of April 6, 1983 found that Defendant Kenneth Wayne Frieze, Joyce Janet Frieze and Ronald G. Culbertson have no interest in the above described beans"; and that "said beans were part of the 1981 crop grown by Defendant debtors and are part of the security interest of Plaintiff Citizens State Bank."

Because it appeared from the files and records in this action that the issues were resolvable by resort to the documents underlying the claims of security interest, the court entered its order on April 27, 1983, directing the plaintiff to submit the documentary evidence which supported its claim of a security interest superior to that of the United States of America, to whom this court had previously awarded the sum here in controversy in *United States of America v. Frieze*, Adversary Action No. 82–1712–SW–11 (Bkrtcy.W.D.Mo.Apr. 6, 1983).[1] The plaintiff filed its documentary evidence on May 12, 1983, purporting to demonstrate that it had a security interest in the 1981 growing crops of the debtors Frieze and

that it was perfected as of May 22, 1981. The documents before the court tended to show that this perfection date was in advance of the perfection date of the lien of the United States of America.[2] Accordingly, on June 6, 1983, this court issued its order directing the defendants to show cause why the plaintiff should not be regarded as having the superior security interest, observing that:

"The Citizens State Bank of Nevada has, on May 12, 1983, filed with the court documents which purport to demonstrate a perfected security interest in 'all 1981 growing crops' as of May 22, 1981. Thus, it would appear that it is entitled to the proceeds of such crops as payment against approximately $40,000 which is still owed to it by the defendant partnership."

The United States of America, however, in its response to that order, pointed out, *inter alia,* that "plaintiff's financing statement does not purport to cover 'proceeds' of crops and accordingly would not perfect an interest in funds held by defendant Holcomb Grain." Because the copies of the financing statements which had been supplied to the court by the plaintiff did not have the

1. In that action, the United States of America attached to its complaint copies of documents which evidenced a security interest in "farm stored soybeans" and their proceeds which was perfected by filing on December 30, 1981. In its final judgment in that action, this court made the following material findings: "The defendant debtors and Culbertson were partners in an agricultural operation at the material times in question. Some soybeans which were the property of the partnership and the proceeds of partnership operations were stored on the debtors' real property. These beans had been produced through the individual efforts of the defendant Culbertson, but there is no dispute in the evidence that the beans were considered to be partnership property. After the beans had been stored on the Friezes' property for a period of time, the defendant Culbertson pledged them to plaintiff as security for a loan and also removed them and sold them to the Holcomb Grain Company for $9,088.94. The Holcomb Grain Company, in doubt as to whom the sale monies should be paid and unwilling to chance violating the automatic stay, has refused to pay the monies over to plaintiff. The evidence neither demonstrates nor implies that

the Friezes knew of the removal of the soybeans from the place of storage on their property or consented to or acquiesced in Mr. Culbertson's pledging of the beans to plaintiff.

"On the other hand, there is no evidence that the plaintiff or any of its agents knew or should have known that Mr. Culbertson was without authority to pledge the property. According to the evidence, there was nothing which should have put the plaintiff on inquiry in this regard. Under such circumstances, the applicable legal doctrines hold that the apparent authority of one partner to act for another is sufficient to validate the action insofar as it is relied upon by a third party. Therefore, the court must hold the plaintiff's security interest, which is otherwise valid and property perfected, to be effective. The proceeds of sale must accordingly be paid over to plaintiff. The debtors must rely on their right of action against the defendant Culbertson to compensate them for any damage done by them. They cannot improve their position in this regard by an unadorned contention that a prior lienholder exists."

2. See note 1, *supra.*

"proceeds" boxes checked, the court issued its order on July 13, 1983, directing the plaintiff and defendants to show cause why the monies in the possession of the Holcomb Grain Company should not be turned over to the United States of America, noting that the "proceeds" boxes had not been checked on the copies of the financing statements submitted by the plaintiff. In response to that order, the plaintiff has not made any factual issue that the security interest does not cover proceeds, but rather has asserted that the monies in the hands of Holcomb does not constitute "proceeds." This position, however, is contravened by the applicable letter of Missouri law, which defines "proceeds" as "whatever is received when collateral or proceeds is *sold,* exchanged, collected or otherwise disposed of." Section 400.9–306(1) RSMo (Emphasis added.). See also *In re Platt,* 257 F.Supp. 478 (E.D.Pa.1966). The "proceeds" box must be checked in order to perfect a security interest in the proceeds of the collateral. Accordingly, the lien of the United States of America, as the first to be perfected,[3] must be regarded as the superior security interest.[4]

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the proceeds in the principal sum of $9,088.94 held by the Holcomb Grain Company be,

---

3. See note 1, *supra.*

4. The plaintiff contends that "the security interest of the United States of America as per their evidence is for farm stored beans, not for beans recently harvested and sold pursuant to the harvest." But the evidence clearly shows that these beans were stored for a period of time, see note 1, *supra,* and the description is sufficient to cover the beans here in controversy. Plaintiff further relies upon the provisions of section 400.9–306(3) RSMo which grant a party which holds a security interest in the original collateral ten days after receipt of the proceeds by the debtor in which to perfect a security interest in proceeds. It is contended by the plaintiff that the proceeds of the sale continue in fact to be held by the Holcomb Grain Company and that, therefore, even now, the debtors have never "received" the proceeds within the meaning of that section. According to the uncontested allegations of the plaintiff's complaint, however, a sale of the beans has been consummated and Holcomb Grain Company "is apparently in doubt as to whom the sale money should be paid and is unwilling to pay over to any party until such priority is determined." The Holcomb Grain Company, however, has been served with process in the action at bar, according to the certificate of service filed by plaintiff's counsel, and has not filed any responsive pleading setting up any right to possession of the sale proceeds on its own account. Therefore, the Holcomb Grain Company necessarily held the proceeds as the debtors' agent. If a "sale" occurred, as the plaintiff admits in its complaint, the "price" must necessarily have been paid. "A 'sale' consists in the passing of title from the seller to the buyer for a price." Section 400.2–106(1) RSMo. It does not appear that the buyer can extend the time for perfection of a security interest in the proceeds by simply holding the proceeds, with or without the agreement of the debtors, and not under any cognizable claim of right. More than ten days have elapsed since the admitted sale took place and the effective reception of the proceeds by the debtors. If it is admitted that a sale took place, the consideration must necessarily have been received, as a matter of law, by the debtors. Where a transaction is a cash transaction, the law holds that consideration is deemed to be given in the form of cash at the time the goods are conveyed. "(B)y contracting for cash on delivery, the parties intend that payment is made a condition precedent to the completion of the sale." *Shearer Motor Co. v. Burmeister,* 216 S.W.2d 955, 958 (Mo.App.1949). "Where no specific intention appears from the contract of the parties the court must take all of the circumstances surrounding the transaction and therefrom declare the intention. In the absence of a specifically appearing intention in what is commonly understood as a 'cash' transaction, both parties contemplate the passage of title and the payment therefor shall be simultaneous. They contemplate also that the possession shall pass at the same time. Under such a transaction the receipt of payment carries the title and the right to immediate possession. The withholding of the possession does not affect the right thereto or the passage of the title. Here the title passed with the acceptance of the price, and the sale was completed even though attempted delivery was never fully accomplished." *Calcara v. United States,* 53 F.2d 767, 768 (8th Cir.1931). To argue that the debtor has not received the proceeds at a time when a sale has admittedly been consummated would permit the debtor, simply by delaying or refusing to take custody of the proceeds, or the buyer, through ignoring the debtor's right to their immediate possession, to extend the time in which the creditor may perfect his security interest. It cannot be assumed that the Code intended for such artificial and potentially fraudulent extensions to take place.

and they are hereby, concluded to be the property of and due and payable to the United States of America.