966 F.2d 1338
 60 USLW 2799, Bankr. L. Rep. P 74,647, 17
UCC Rep.Serv.2d 1316
 In re RELIANCE EQUITIES, INC., Debtor.
H. Christopher CLARK, Chapter 7 Trustee of the Estate of
Reliance Equities, Inc., Plaintiff-Appellee,
v.
VALLEY FEDERAL SAVINGS AND LOAN ASSOCIATION and Mid Valley
Mortgage Corporation, Defendants-Appellants.
 No. 90-1191.
 United States Court of Appeals,
Tenth Circuit.
 June 9, 1992.
 
 A. Bradley Bodamer of Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan. (Richard Silverstein of Galchinsky & Silverstein, Denver, Colo., with him on the brief) for plaintiff-appellee.
 Elizabeth J. Greenberg (Debora D. Jones, with her on the brief) of Sherman & Howard, Denver, Colo., for defendants-appellants.
 Before LOGAN and EBEL, Circuit Judges, and WINDER, District Judge*.
 EBEL, Circuit Judge.
 
 
 1
 This case involves a funding facility agreement in which the appellants provided financing for certain mortgage loans. The mortgage loans were evidenced by promissory notes and secured by deeds of trust, and both the promissory notes and the deeds of trust were assigned to the appellants as security for the financing. Ultimately, the promissory notes and the deeds of trust were sold to a third party, and the appellants contend that they held a perfected security interest in the proceeds from such sale. The bankruptcy court disallowed the claim, finding that the appellants did not hold a perfected security interest in the proceeds and further that their unsecured claim had been filed too late. The District Court for the District of Colorado upheld the bankruptcy court's decision.
 
 
 2
 We address two issues on appeal. First, did the appellants have a perfected security interest in the proceeds from the sale of the promissory notes to a third party? Second, if the appellants did not have a perfected security interest in the proceeds, was the appellants' unsecured bankruptcy claim timely? We answer both questions in the negative and affirm the decision below.
 
 I. BACKGROUND
 
 3
 In June 1987, Mid Valley Mortgage Corporation ("Mid Valley") and Reliance Equities, Inc. ("Reliance") entered into a funding facility agreement. Mid Valley agreed to provide Reliance with a warehouse line of credit for the purpose of funding certain mortgage loans to be originated by Reliance. Before Mid Valley would fund a loan, Reliance was required to provide Mid Valley with an executed assignment of the promissory note evidencing the loan to be originated, which assignment (together with the funding facility agreement) served as a security instrument. When the promissory notes were sold to a third-party investor, the investor was to transfer the proceeds from that sale directly to an account designated by Mid Valley.
 
 
 4
 On July 27, 1987, within 21 days of their funding by Mid Valley, Reliance sold and transferred the promissory notes[1] in dispute in this case to Platte Valley Federal Savings and Loan Association ("Platte Valley"). Platte Valley was instructed to forward the purchase payments to Mid Valley. Instead, however, Platte Valley placed the payments for these promissory notes into various accounts over which it exercised control. Although the accounts were ultimately for the benefit of Reliance, Platte Valley sought to set off against such funds certain obligations owed by Reliance to Platte Valley.
 
 
 5
 After Reliance filed its Chapter 7 bankruptcy petition on July 30, 1987, Platte Valley placed an administrative freeze on the accounts containing the purchase payments. Mid Valley filed a proof of claim for $350,000 in the Reliance bankruptcy case, alleging that it originally held a security interest in the mortgage loans and that it then held a security interest in the proceeds derived from the loans. Unfortunately for Mid Valley, however, it did so one day late.
 
 
 6
 In October 1988, Valley Federal Savings and Loan Association ("Valley Federal") succeeded to all of Mid Valley's rights. In January 1989, the Trustee of the Estate of Reliance ("the Trustee") and Platte Valley entered into a settlement agreement by which Platte Valley retained $100,000 of the proceeds, $25,000 remained in the account to pay contingent claims, and the remainder went to the Trustee. In July 1989, Valley Federal objected to this settlement agreement and obtained an order for adequate protection, which prohibited the Trustee from using the proceeds pending determination of the validity of Valley Federal's claim. Soon thereafter, in September 1989, Valley Savings, a Federal Savings and Loan Association ("Valley Savings"), succeeded to all of Valley Federal's rights to the claim.[2]
 
 
 7
 The bankruptcy court found that Mid Valley did not hold a perfected security interest in the proceeds from the sale of the promissory notes at issue and that its claim in the Reliance bankruptcy case had been filed too late. Accordingly, it disallowed the $350,000 claim. The District Court for the District of Colorado upheld the bankruptcy court's decision.
 
 
 8
 This Court has jurisdiction pursuant to 28 U.S.C. § 158(d). In reviewing a district court's decision affirming the decision of a bankruptcy court, the court of appeals must not disturb the bankruptcy court's findings of fact unless they are clearly erroneous, but conclusions of law are reviewed de novo. In re Mullet, 817 F.2d 677, 678-79 (10th Cir.1987).
 
 II. DISCUSSION
 
 9
 A. Did Mid Valley Hold a Perfected Security Interest in Proceeds?
 
 
 10
 When Reliance sold the promissory notes in dispute in this case to Platte Valley, Platte Valley was instructed to forward the purchase payments to Mid Valley. Platte Valley did not do so; instead, it placed the payments into various accounts over which it had control to be held for Reliance. We conclude that Mid Valley never perfected its security interest in those proceeds and was therefore relegated to the status of a general unsecured creditor.
 
 
 11
 The Uniform Commercial Code, as adopted by Colorado, defines "proceeds" broadly to include "whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds.... Money, checks, deposit accounts, and the like are 'cash proceeds.' All other proceeds are 'noncash proceeds.' " Colo.Rev.Stat. § 4-9-306(1). The parties do not dispute that the funds that Platte Valley placed in its internal accounts to be held for Reliance constitute proceeds. See Hearing on Bankruptcy Appeal (May 25, 1990), R., Vol. IV, at 11, 19-20. We agree.
 
 
 12
 Mid Valley's security interest[3] in the promissory notes pledged as collateral for purposes of the funding facility agreement entitled Mid Valley to a security interest in these proceeds. See Colo.Rev.Stat. § 4-9-306(2) ("a security interest ... continues in any identifiable proceeds including collections received by the debtor"); Funding Facility Agreement p 7, R., Vol. V, Ex. 1. Section 4-9-306(2) is applicable despite the fact that Reliance never physically received the full purchase payments when it sold the promissory notes to Platte Valley because Platte Valley did place the payments into various accounts to be held for Reliance. Although Reliance's access to these accounts was restricted and they were subject to setoff, the bankruptcy court and the district court found that they were nonetheless the debtor's accounts. We do not conclude that this finding was in error.[4]
 
 
 13
 However the proceeds might be characterized, Reliance received such proceeds on the date of its transaction with Platte Valley--July 27, 1987. As the court stated in In re Frieze, 32 B.R. 194 (Bankr.W.D.Mo.1983):
 
 
 14
 If it is admitted that a sale took place, the consideration must necessarily have been received, as a matter of law, by the debtors.... In the absence of a specifically appearing intention in what is commonly understood as a "cash" transaction, both parties contemplate the passage of title and the payment therefor shall be simultaneous.... To argue that the debtor has not received the proceeds at a time when a sale has admittedly been consummated would permit the debtor, simply by delaying or refusing to take custody of the proceeds, or the buyer through ignoring the debtor's right to their immediate possession, to extend the time in which the creditor may perfect his security interest. It cannot be assumed that the Code intended for such artificial and potentially fraudulent extensions to take place.
 
 
 15
 Id. at 196 n. 4. Thus, Mid Valley acquired a security interest in the proceeds from the sale of the promissory notes on July 27, 1987.
 
 
 16
 In order to maintain its rights to these proceeds as against other creditors of the debtor and the Trustee in bankruptcy, Mid Valley had to perfect its interest. We conclude that it did not do so. "A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken." Colo.Rev.Stat. § 4-9-303(1). The parties agree that a security interest had attached, but disagree as to whether Mid Valley took the requisite steps to perfect that security interest. Perfection is governed by very specific requirements that are generally designed to "furnish[ ] public notice of the secured party's interest in the collateral, thereby protecting third persons against the secret or undisclosed lien." In re Van Kylen, 98 B.R. 455, 464 (Bankr.W.D.Wisc.1989).
 
 
 17
 Ordinarily, a party desiring to perfect a security interest in instruments, such as the promissory notes involved here, is required to take possession of them. Colo.Rev.Stat. § 4-9-304(1). Here, Mid Valley admits that it never obtained possession of the promissory notes in which it claims a security interest. Instead, Mid Valley contends that its security interest was temporarily perfected under the automatic perfection provisions of Colo.Rev.Stat. §§ 4-9-304(4) and 4-9-306(3) and that its rights became fixed as of the date the bankruptcy proceedings were commenced. We agree that Mid Valley's security interest in the proceeds was temporarily perfected, but hold that this interest thereafter ceased to be perfected, rendering Mid Valley a general unsecured creditor.
 
 
 18
 Mid Valley's security interest was temporarily perfected under sections 4-9-304(4) and 4-9-306(3). Section 4-9-304(4) provides:
 
 
 19
 A security interest in instruments ... or negotiable documents is perfected without filing or the taking of possession for a period of twenty-one days from the time it attaches to the extent that it arises for new value given under a written security agreement.
 
 Section 4-9-306(3) provides:
 
 20
 The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected, but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless: ... (c) The security interest in the proceeds is perfected before the expiration of the ten-day period.
 
 
 21
 Mid Valley gave new value in connection with each of the promissory notes at issue when it provided funding for each loan. Thus, under section 4-9-304(4), Mid Valley's security interest was automatically perfected for twenty-one days following initiation of the promissory notes. The promissory notes were sold on July 27, 1987, which was within this twenty-one-day period, and, as discussed supra, Reliance received the proceeds on this same date. Thus, under section 4-9-306(3), Mid Valley enjoyed an automatic perfected security interest in the proceeds for ten days, beginning on July 27, 1987. During these ten days, Mid Valley did nothing to extend its rights. Thus, its security interest became unperfected after this ten-day period expired.
 
 
 22
 Mid Valley argues that the perfected status of its security interest in proceeds continued indefinitely once bankruptcy proceedings began because the bankruptcy petition was filed during the ten-day period during which section 4-9-306(3) gave it an automatic perfected interest in the proceeds. Mid Valley cites Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 738, 51 S.Ct. 270, 272, 75 L.Ed. 645 (1931), for the proposition that valid liens existing on the date of bankruptcy proceedings are preserved. In so doing, Mid Valley reads too much into one isolated sentence in a case which, we note, was decided before the enactment of the Uniform Commercial Code and the federal Bankruptcy Reform Act of 1978 (Bankruptcy Code), Pub.L. 95-598, 92 Stat. 2549.
 
 
 23
 The factual situation in Isaacs differed markedly from the scenario in this case. The controversy in Isaacs centered upon a note secured by a mortgage on land owned by the bankrupt. The holder of the note instituted foreclosure proceedings against the bankrupt. The Supreme Court determined that the trustee had title to the bankrupt's property and that the bankruptcy court had custody of the property. Id. at 737. As such, the bankruptcy court had exclusive jurisdiction to determine all questions regarding control, possession, and title of the property. Id.
 
 
 24
 With respect to the bankruptcy court's authority, the Court stated: "Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation." Id. at 738. It is this comment regarding preservation of valid liens existing at the commencement of a bankruptcy proceeding upon which Mid Valley focuses. However, this statement was not made in the context of a discussion regarding perfection and was by no means a critical aspect of the opinion. The lien in Isaacs had been independently recorded, and the Court was, in essence, saying only that a bankruptcy proceeding does not automatically abrogate valid liens. Here, Mid Valley had a perfected security interest for a limited time and was seeking to extend that security interest beyond its statutory life because of the bankruptcy filing. Isaacs offers no support for such an extension.
 
 
 25
 The other cases relied upon by Mid Valley are similarly distinguishable. General Electric Credit Corp. v. Nardulli & Sons, Inc., 836 F.2d 184 (3d Cir.1988); In re Chaseley's Foods, Inc., 726 F.2d 303 (7th Cir.1983); and In re Bond Enterprises, 54 B.R. 366 (Bankr.D.N.M.1985), were all cases in which the secured party had perfected its security interest by filing a financing statement prior to the debtor's bankruptcy. Thus, those cases involved U.C.C. § 9-403(2) or the principle represented by that provision.[5] That section provides that if a security interest perfected by the filing of a financing statement exists at the time insolvency proceedings are commenced, that interest remains perfected until such proceedings are terminated. More specifically, section 9-403(2) provides that if a previously filed financing statement is due to expire during the course of bankruptcy proceedings, the creditor need not file a continuation statement until after such proceedings are terminated.
 
 
 26
 Financing statements allow all parties who have an interest in the debtor's financial condition, particularly the trustee and other creditors, to determine whether the debtor's property is encumbered. No secret liens are created when perfection occurs by means of a financing statement.
 
 
 27
 In this case, Mid Valley did not file a financing statement. Rather, Mid Valley relies upon temporary perfection under Colo.Rev.Stat. § 4-9-306(3). To freeze priorities upon the initiation of insolvency proceedings in an automatic perfection situation would contravene one of the principal purposes of the Bankruptcy Reform Act: to strike down secret liens. See In re Arnett, 731 F.2d 358, 363 (6th Cir.1984) ("The particular problems posed by the delay between creation and perfection of security interests were well recognized by Congress. One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of 'secret liens'...."); In re Valairco, Inc., 9 B.R. 289, 295 (Bankr.D.N.J.1981) ("One of the cardinal principles of the Bankruptcy Act is to ... strike down secret liens.... [T]he Bankruptcy Act abhor[s] secret liens....") (citation omitted).
 
 
 28
 The automatic perfection provisions of section 4-9-304(4) and 4-9-306(3) were designed to address particular short-term exigencies where creditors could not always be expected to perfect their security interests otherwise. The motivating reasons behind these sections do not logically extend throughout the duration of a potentially lengthy bankruptcy proceeding. The short and precise durations explicitly provided for by the automatic security provisions in sections 4-9-304(4) and 4-9-306(3) are inconsistent with the concept urged upon us by Mid Valley that a bankruptcy filing by the debtor should extend such security interests indefinitely.
 
 
 29
 Indeed, we are aware of no court that has applied the extension provision of section 9-403(2) to sections 9-304(4) and 9-306(3). Rather, courts have construed the section 9-403(2) exception narrowly. For example, In re Utah Agricorp, Inc., 12 B.R. 573 (Bankr.D.Utah 1981), involved a creditor's failure to perfect a security interest after removal of the collateral to Utah. The court in Agricorp distinguished cases involving U.C.C. § 9-403 and found that the provision excusing the filing of continuation statements constitutes a narrow and specific exception to the U.C.C.'s perfection requirements. Id. at 577-78. The court specifically noted that the institution of insolvency proceedings does not extend the grace period provided in section 9-103(1)(d). Id.
 
 
 30
 The court in In re Kirk, 71 B.R. 510 (C.D.Ill.1987), also construed the exception narrowly. In Kirk, a security interest in a beneficial interest in a trust was automatically perfected under section 9-302(1)(c) of the Illinois U.C.C. However, when that interest was sold, the court held that the creditor lost its perfected security interest in the proceeds when it failed to perfect that interest within the twenty-day grace period provided by section 9-306(3). The court stated:
 
 
 31
 [I]n automatic perfection situations, the non-filing of a financing statement creates a "secret lien" since there is no record to put other creditors on notice of the perfected security interest.... [N]either pre-code practice nor commercial necessity mandates automatic perfection of proceeds beyond the 20-day period provided in 9-306(3)(c). Thus, especially in the absence of a special provision to the proceeds section of the Code (§ 9-306), we decline to hold that the type of proceeds here are continually perfected.
 
 
 32
 Id. at 515 n. 4.
 
 
 33
 We find it especially significant that Colo.Rev.Stat. §§ 4-9-304(4) & 4-9-306(3), which address short-term automatically perfected security interests, make no mention of an extension of the perfection period in the event insolvency proceedings are commenced. By contrast, section 4-9-403, which addresses security interests that have been perfected by filing, specifically provides that such security interests remain perfected until termination of the insolvency proceedings and for a limited time thereafter. See Colo.Rev.Stat. § 4-9-403(2). This disparity indicates that the drafters of the Code made a conscious determination that the commencement of bankruptcy proceedings should affect different security interests differently, depending upon how they were initially perfected. Accord Utah Agricorp, 12 B.R. at 578 ("The fact that Section 9-403 specifically deals with the tolling of the necessity of filing continuation statements in insolvency proceedings makes the absence of any mention of such an extension for the temporary grace period ... further indicative of the Code's intent not to extend such periods in insolvency proceedings.").
 
 
 34
 Like the state U.C.C. provisions discussed above, certain provisions of the federal Bankruptcy Code are designed to protect creditors by eliminating secret liens,[6] particularly 11 U.S.C. §§ 544 & 546. Section 544(a) protects creditors by giving the trustee the status of a judicial lien creditor as of the commencement of the case; if an unperfected security interest exists, the trustee has rights in the collateral that are superior to the secured party's rights under Colo.Rev.Stat. § 4-9-301(1)(b). "The purpose of [section 544] is ... to preserve the assets of the estate against unfiled, unrecorded, or secret liens." In re Teerlink Ranch Ltd., 886 F.2d 1233, 1235-36 (9th Cir.1989); see also In re General Coffee Corp., 828 F.2d 699, 701 (11th Cir.1987) ("Congress has resolved through § 544 that the debtor's creditors must at all costs be protected from secret liens.") (citation omitted), cert. denied, 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988).
 
 
 35
 Section 546(b) protects creditors by imposing a notice requirement in certain situations in which bankruptcy intervenes before the creditor has perfected its security interest:
 
 
 36
 If [applicable law regarding perfection] requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.
 
 11 U.S.C. § 546(b).[7]
 
 37
 For the reasons discussed above, we hold that Mid Valley did not have a continuously perfected security interest in the proceeds from the sale of the promissory notes that were originated by Reliance and that were subsequently sold to Platte Valley. Following the expiration of the ten-day period of automatic perfection provided by colo.rEv.stat . § 4-9-306(3), Mid Valley became a general unsecured creditor of the debtor.
 
 
 38
 B. Was Mid Valley's Proof of Claim Untimely?
 
 
 39
 The holder of an unsecured claim is required to file a timely proof of claim in a Chapter 7 proceeding. Thus, we must now determine whether Mid Valley's unsecured claim to the proceeds was timely filed. We agree with the district court that the claim was not timely filed and therefore must be disallowed.
 
 
 40
 A proof of claim in a Chapter 7 liquidation must be filed within 90 days after the first date set for the creditors' meeting. Bankr.R. 3002(c). This provision "is in the nature of a statute of limitations." In re Casterline, 51 B.R. 219, 220 (Bankr.D.Colo.1985) (citations omitted). In the case at hand, the first date set for the creditors' meeting was September 10, 1987, so the bar date for filing claims against the estate was December 9, 1987. Although Mid Valley received notice of the bankruptcy within a week after the filing, Mid Valley did not file a formal proof of claim until December 10, 1987. Tardily filed claims are paid from estate surplus only after priority and certain other timely filed claims have been paid in full. 11 U.S.C. § 726.
 
 
 41
 Mid Valley claims that this late filing constituted excusable neglect in light of the fact that the Trustee was well aware of the nature and extent of Mid Valley's claim prior to the claim bar date. Thus, its late claim should be considered merely an amendment of an earlier, informal claim. The law does not support this contention, however.
 
 
 42
 The bankruptcy courts in Colorado follow a five-prong test with respect to informal proofs of claim:
 
 
 43
 1. the proof of claim must be in writing;
 
 
 44
 2. the writing must contain a demand by the creditor on the debtor's estate;
 
 
 45
 3. the writing must express an intent to hold the debtor liable for the debt;
 
 
 46
 4. the proof of claim must be filed with the Bankruptcy Court; and
 
 
 47
 5. based on the facts of the case, it would be equitable to allow the amendment.
 
 
 48
 In re Bowers, 104 B.R. 362, 364 (Bankr.D.Colo.1989). Here, no writing existed, the creditor filed nothing with the bankruptcy court, and the equities do not favor protecting a financial organization that had numerous opportunities to protect itself. Mid Valley's oral claim was thus insufficient under Bowers.
 
 
 49
 Furthermore, a trustee's knowledge of a claim does not constitute an adequate informal claim, and bankruptcy courts will not ordinarily allow filing of a proof of claim after the claim bar date. In re Sems Music Co., 24 B.R. 376, 379-80 (Bankr.M.D.Tenn.1982). Yet, Mid Valley offers no reasons for special treatment in this case except that the Trustee had notice of the claim and that the claim was filed only a day late. Indeed, Mid Valley recognized in its brief that these excuses are insufficient as a matter of law. Br. of Appellant at 21-22.
 
 
 50
 Like the bankruptcy court and the district court, we sympathize with the appellants' plight. The fact of the matter is, however, that Mid Valley failed to perfect its security interest in the proceeds involved and its unsecured claim was untimely filed under applicable law. Accordingly, we have no choice but to affirm the district court's decision that the appellants' claim must be disallowed.
 
 III. CONCLUSION
 
 51
 For the reasons detailed above, we AFFIRM the district court's ruling.
 
 
 
 *
 The Honorable David K. Winder, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 We refer to the promissory notes and the deeds of trust securing them collectively as "the promissory notes."
 
 
 [2]
 For the sake of simplicity, Valley Federal, Valley Savings, and Mid Valley will sometimes collectively be referred to herein as "Mid Valley" or "the appellants."
 
 
 [3]
 The bankruptcy court assumed that the various documents taken together could be construed as a security agreement, albeit an informal one. For the purposes of this appeal, we make the same assumption
 
 
 [4]
 Alternatively, the accounts receivable or other choses in action that Reliance received as a result of its transaction with Platte Valley might be deemed "noncash proceeds." The parties do not dispute that Reliance's accounts receivable (Platte Valley's accounts payable) constitute proceeds. See Hearing on Bankruptcy Appeal (May 25, 1990), R., Vol. IV, at 11, 19-20
 
 
 [5]
 Chaseley's Foods and Bond involved the 1962 version of section 403(2), which did not expressly provide that a financing statement in effect at the time a bankruptcy proceeding is initiated will remain in effect for the duration of the bankruptcy proceeding. That provision appeared in the 1972 version of the U.C.C., which was not the version adopted by the two states whose law was being applied in Chaseley's Foods and Bond. Nevertheless, those two courts held that if a creditor's security interest is perfected by filing prior to the time a bankruptcy petition is filed, that interest does not lapse during the pendency of the bankruptcy proceedings. See Chaseley's Foods, 726 F.2d at 311; Bond, 54 B.R. at 370. In so doing, those courts emphasized that the 1972 amendment was not intended to reflect a change in the law but rather merely reflected preexisting law. See Chaseley's Foods, 726 F.2d at 309 & n. 1a; Bond, 54 B.R. at 370. Thus, we will address these cases in tandem with Nardulli, which involved the latter version of § 403(2)
 
 
 [6]
 State U.C.C. provisions and federal bankruptcy law have similar aims: "The legislative history of the Bankruptcy Code states that one purpose of the 1978 reforms was to make bankruptcy law generally more congruent with modern commercial practices, in particular the Uniform Commercial Code." In re Antweil, 931 F.2d 689, 693 (10th Cir.1991) (citation omitted), aff'd, --- U.S. ----, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992)
 
 
 [7]
 Section 546(b) allows creditors to perfect certain security interests post-petition, with the perfection relating back to the prepetition date. See id. ("The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection."); Virginia Beach Fed. Sav. & Loan Ass'n v. Wood, 901 F.2d 849, 852 (10th Cir.1990). Thus, section 546(b) is inapplicable in this case, in which the security interest was perfected at the time the bankruptcy proceedings commenced, albeit only temporarily. Nevertheless, this section is illustrative of Congress' desire to protect creditors from secret liens