**In re RAINBOW TRUST, Debtor.**

**Bankruptcy No. 94–10290.**

United States Bankruptcy Court, D. Vermont.

March 13, 1995.

R.A. Scholes, Montpelier, VT, for Rainbow Trust (Debtor).

A. Newhouse, Barre, VT, for Northern Petroleum Equipment (Petroleum).

J.T. Schwidde, Rutland, VT, for Official Committee of Unsecured Creditors (Committee).

## MEMORANDUM OF DECISION ON DISALLOWANCE OF LATE FILED CLAIM

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter is before us [1] on Debtor's objection to the late-filed claim of Petroleum. We disallowed the claim in a bench ruling at the conclusion of the February 1, 1995 hearing on the matter. This Memorandum of

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable to this proceeding by Fed. R.Bkrtcy.P. 7052.

Decision amplifies and supplements the grounds stated in our verbal order.

## FACTS

Debtor, a business trust, filed for protection under Chapter 11 of the Bankruptcy Code on May 10, 1994. Debtor's petition included a list of creditors as required by § 521(1).[2] On May 11, 1994, the Clerk of Court mailed to the listed creditors, including Petroleum, a written notice of the date set for the § 341(a) first meeting of creditors and the September 13, 1994 claims bar date.

Debts owed to several creditors, Petroleum among them, were listed by Debtor as disputed, because of a convoluted business structure that confused creditors and made it difficult to determine what business entity actually was obligated to pay particular debts. Vermont Local Bankruptcy Rule 4002(a) requires that Debtor send to each creditor listed as disputed, unliquidated, or contingent, additional special written notice by first class mail of Debtor's filing and of the way in which the creditor's claim was scheduled.[3] Although Debtor's compliance with V.L.B.R. 4002(a) was a few days late,[4] we found that this tardiness did not prejudice Petroleum. The claims bar date passed on September 13, 1994. Debtor's Omnibus Objection to Claims, which included an objection to Petroleum's claim, was filed on December 16, 1994. Petroleum did not file its proof of claim until January 25, 1995, over four months after the bar date.

Petroleum does not dispute its receipt of both the Clerk's notice and the special V.L.B.R. 4002(a) notice. Indeed, Petroleum's actual notice of Debtor's bankruptcy is established by the fact that Petroleum was, at its own request, appointed to the Committee of Unsecured Creditors by the United States Trustee.

Petroleum raises two defenses to Rainbow's objection to its claim. First, it argues that its conduct is tantamount to the filing of an informal proof of claim because it attended the Section 341(a) hearing, asked to be named to the Committee, and filed some unspecified document with the United States Trustee's Office in Albany, N.Y., the contents of which were not shared with us. Second, Petroleum argues that its failure to timely file a proof of claim is excusable neglect within the meaning of Fed.R.Bkrtcy.P. 9006(b)(1), because the notices were sent directly to Petroleum's office and not to its attorneys. We sustain Debtor's objection, disallowing Petroleum's claim as untimely filed, because we hold that, on the facts and circumstances of this case, neither defense is sufficient to save Petroleum's claim.

## DISCUSSION

Although debtors are required to file schedules listing the claims against them, creditors are permitted to file their own proofs of claim under § 501. The filing of a proof of claim is mandatory in Chapter 11 proceedings for creditors whose debts are scheduled by the debtor as disputed, contingent, or unliquidated. § 1111(a); Fed. R.Bkrtcy.P. 3003(c)(2); *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. ——, ——, 113 S.Ct. 1489, 1492, 123 L.Ed.2d 74 (1993). If such a creditor fails to

**2.** All statutory references are to the Bankruptcy Code, Title 11 of the United States Statutes, unless otherwise specifically indicated.

**3.** V.L.B.R. 4002(a) provides:
The filing of a Chapter 11 petition containing claims that are listed as disputed, unliquidated, or contingent requires the debtor to mail a notice by first class postage to each disputed, unliquidated, or contingent claimant stating that the debtor has filed bankruptcy and that the creditor's claim is disputed, unliquidated or contingent. The debtor shall file with the petition, or within thirty (30) days thereafter, proof of service of this Rule's requirement. Vermont is a rural state. Prolonged winter conditions often make travel treacherous, especially

for the many clients and attorneys located on the other side of the mountains from the Bankruptcy Court. It is unrealistic to expect creditors to come to the Clerk's office to determine how their claims have been scheduled by their debtors. Thus, we promulgated V.L.B.R. 4002(a) to provide early and up front due process for creditors whose claims are listed as disputed, unliquidated or contingent.

**4.** V.L.B.R. 4002(a) requires that Debtor file proof of service of the notice within 30 days of filing of its petition. Debtor's Petition was filed May 10, 1994. Debtor's Certificate of Service of the V.L.B.R. 4002(a) notice was dated June 19, 1994, and was received by the Court on June 21, 1994.

timely file its proof of claim, it "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed.R.Bkrtcy.P. 3003(c)(2).

The claims bar date is set by the Court, under Fed.R.Bkrtcy.P. Rule 3003(c)(3), which provides that "{t}he court shall fix ... the time within which proofs of claim or interest may be filed."

> The issuance of the claims bar date is an essential feature of the reorganization process because it provides a date certain after which a plan can be negotiated, formulated, and eventually confirmed. The bar date is much more than a means to limit claims; it provides finality to a process that will ultimately lead to the rehabilitation of the debtor and the payment of claims under a plan of reorganization.

*In re Drexel Burnham Lambert Group, Inc.,* 151 B.R. 674, 679 (Bkrtcy.S.D.N.Y.1993), *affirmed, Indian Motorcycle Associates, Inc. v. The Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 157 B.R. 532 (S.D.N.Y.1993).

■ The claims bar date in this case was fixed upon filing as Sept. 13, 1994. Petroleum argues that its attendance at the section 341(a) hearing, its filing of an unspecified piece of paper with the United States Trustee's office, and its service on the Unsecured Creditors' Committee constitute in the aggregate an "informal" proof of claim. The doctrine of informal proof of claim derives from the general liberty afforded creditors to amend their claims. *Wright v. Holm (In re Holm),* 931 F.2d 620, 622 (9th Cir.1991); *In the Matter of E.C.W., Inc.,* 107 B.R. 451, 453 (Bkrtcy.D.Conn.1989). Under this court-made rule, filing of the formal proof of claim is said to relate back to the time of the filing of the informal proof of claim. *Wright, supra,* 931 F.2d at 622; *In re Vaughn Chevrolet, Inc.,* 160 B.R. 316, 318 (Bkrtcy.E.D.Tenn. 1993). To constitute an informal proof of claim, a document "must state an explicit demand showing: 1) the nature of the claim; 2) the amount of the claim against the estate; and 3) evidence of an intent to hold the debtor liable." *In re Drexel Burnham Lambert Group, Inc.,* 129 B.R. 22, 26 (Bkrtcy. S.D.N.Y.1991). *See also, Clark v. Valley*

*Federal Savings and Loan Association (In re Reliance Equities, Inc.),* 966 F.2d 1338, 1345 (10th Cir.1992); *Charter Company v. Dioxin Claimants (In re Charter Company),* 876 F.2d 861, 863 (11th Cir.1989). While we infer from the circumstances that Petroleum did indeed want to hold Debtor liable, we have been shown no document setting forth any of the three elements required of an informal proof of claim.

■ Over the years, courts have also imposed an additional requirement for a valid informal proof of claim. It must be filed with the court, *Clark, supra,* 966 F.2d at 1345; *E.C.W., supra,* 107 B.R. at 453, or at least fall within the purview of the then prevailing "misdelivery rule." *Vaughn, supra,* 160 B.R. at 320–21. The current misdelivery rule is located in Fed.R.Bkrtcy.P. 5005. Although Rule 5005(a) requires that proofs of claims be filed with the Clerk of the Court, Rule 5005(c) provides that "{i}n the interests of justice, a court may order that a paper erroneously delivered [to the United States Trustee] shall be deemed filed with the clerk ... as of the date of its original delivery."

■ The Committee notes provide us no assistance in interpreting this section. The use, however, of "in the interests of justice, a court may ..." indicates that the matter is committed to our discretion. We choose not to exercise our discretion in this case. In the first place, Rule 5005(c) doesn't apply because no paper was "erroneously delivered" here. Petroleum intended to send to the U.S. Trustee whatever it was it sent. Its action was willful. Second, we haven't seen the piece of paper filed with the U.S. Trustee's office, and thus are unable to determine when it was sent and whether it contains the necessary elements of a proof of claim, formal or informal. Finally, we do not believe that the "interests of justice" require stretching the Rule to accommodate a creditor who received more than adequate notice.

■ Petroleum argues that even if it is not entitled to an informal proof of claim, we should allow its proof of claim based on excusable neglect, under Fed.R.Bkrtcy.P. 9006(b), which provides, in pertinent part:

{W}hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

The question of what excusable neglect means has perplexed courts and commentators for a considerable period of time. *See, e.g., Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Chrysler Motors Corp. v. Schneiderman,* 940 F.2d 911 (3d Cir.1991); M. Zelmanovitz and E. Jacobson, *The Reconsideration of Contingent and Disputed Claims Under Bankruptcy Code Section 502(j),* 23 Seton Hall L.Rev. 1612 (1993). In *Pioneer,* the Supreme Court listed several factors to be analyzed to determine if neglect is excusable.

These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer, supra,* 507 U.S. at ——, 113 S.Ct. at 1497. Although the Supreme Court in *Pioneer* did allow the claim of a creditor whose attorney inadvertently failed to file a proof of claim, 113 S.Ct. at 1500, several important differences distinguish that case from this one. In *Pioneer,* the Supreme Court "consider[ed] significant that the notice of the bar date was outside the ordinary course in bankruptcy cases."

As the Court of Appeals noted, ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. We agree with the court that the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting," without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification.

*Pioneer, supra,* 507 U.S. at ——, 113 S.Ct. at 1499 (citation omitted). In the case at bar, Petroleum concedes that it received the Clerk's notice of the claims bar date. Unlike the notice in *Pioneer,* the notice received by Petroleum clearly states the claims bar date in large, bold-faced type that stands out conspicuously at the top of the page, and also contains a paragraph elaborating on the significance of the date. Petroleum also concedes that it received the special V.L.B.R. 4002(a) notice. Thus, Debtor afforded Petroleum what might be described as 'super' due process, with more than ample notice of the need to file a timely proof of claim. Petroleum was four months late.

Petroleum argues that its 'neglect' in failing to file its proof of claim is excusable because of the fact that the notices were mailed directly to its offices, rather than to the offices of its attorney. At the time the notices in question were mailed out, no attorney had appeared for Petroleum, which is not at all surprising given the fact that the case had just commenced. An attorney is merely the agent of its client, the principal. *Pioneer, supra,* 507 U.S. at ——, 113 S.Ct. at 1499. The purpose of the notices was to inform Petroleum, as principal, of legal proceedings which concerned it as principal. *Pioneer* expressly held that parties are to "be held accountable for the acts and omissions of their chosen counsel." *Pioneer, supra,* 507 U.S. at ——, 113 S.Ct. at 1499. It would be strange indeed if we were to hold that parties are not to be held accountable for their own acts and omissions.

Finally, we believe that allowance of Petroleum's late-filed claim would prejudice Debtor and its other creditors. In *Pioneer,* there was no issue of "prejudice to the debtor or of disruption to efficient judicial administration posed by the late filings." *Id.,* 507 U.S. at ——, 113 S.Ct. at 1499. Indeed, as the Supreme Court noted, "the Bankruptcy Court took judicial notice of the fact that the debtor's second amended plan of reorganization ... takes account of respondents' claims." *Id.* Here, Debtor's proposed plan envisioned the sale of its property and payment of the allowed claims of rightful creditors. The purpose of the claims bar date was to ensure that all claims would be known so sale terms could be fixed, the sale consummated, and a

plan confirmed and carried out. The prospective sales price does not ensure full payment to all creditors. Allowance of Petroleum's claim out of time will prejudice those creditors who filed on time, because it adds even more uncertainty to an already difficult case, and changes expectations of the parties that were fixed four months before Petroleum filed its proof of claim. Those expectations provided the structure within which the parties negotiated, formulated strategy, and made choices about how to act. Allowance of late-filed claims changes the game in the middle, after the players who sat down on time have already drawn their cards. While there may, on occasion, be grounds for doing that, we find none here. Petroleum got more than adequate notice. A finding of excusable neglect here would be tantamount to reading "excusable" out of the rule, throwing in the towel, and allowing any creditor to file any time it got around to it. That would make negotiation and accommodation difficult, and the prospect for plan confirmation far more remote. Accordingly, we deny Petroleum's defense of excusable neglect.[5]

---

**5.** It is also evident from the record that Petroleum delivered its oil to the wrong debtor. Thus, even if the claim had been timely filed, we would have disallowed it for this reason.