In re John C. CROWELL, Individually and d/b/a TRAXS Real Estate, TRAXS Development, Excel Realty, Questor Financial Group, Inc., and Summit Place, Debtor.

Lloyd T. Whitaker, Trustee in Bankruptcy for John C. Crowell Individually and d/b/a TRAXS Real Estate, TRAXS Development, Excel Realty, Questor Financial Group, Inc., and Summit Place, Plaintiff,

v.

CIT Group/Equipment Financing, Inc.; Thomas A. ("Ace") Appling; Superior Energy Services, Inc., and James Mann, Defendants.

In re John C. Crowell, Individually and d/b/a TRAXS Real Estate, TRAXS Development, Excel Realty, Questor Financial Group, Inc., and Summit Place, Debtor.

Lloyd T. Whitaker, Trustee in Bankruptcy for John C. Crowell Individually and d/b/a TRAXS Real Estate, TRAXS Development, Excel Realty, Questor Financial Group, Inc., and Summit Place, Plaintiff,

v.

CIT Financial USA, Inc., f/k/a Newcourt Financial USA, Inc.; Anthony Edward Antonio; Marty Scheleving; Anthony Edward Antonio and Marty Scheleving d/b/a A & A Excavators; A & A Excavators, Inc.; and Keith Garner, Defendants.

Nos. CIV. 1:03CV139, CIV. 1:03CV140.

United States District Court,
W.D. North Carolina,
Asheville Division.

Jan. 30, 2004.

Langdon M. Cooper, Gastonia, NC, for Appellant.

Marjorie Rowe Mann, Roberts & Stevens, P.A., Asheville, NC, Dennis A. Dressler, Askounis & Borst, P.C., Chicago, IL, for Appellee.

### MEMORANDUM OF OPINION AND ORDER

THORNBURG, District Judge.

**THESE MATTERS** are before the Court on Plaintiff's appeals of two May 29, 2003, decisions of the United States Bankruptcy Court in the Western District of North Carolina and on Plaintiff's motions to strike certain parts of both Defendants' responses.

### I. STATEMENT OF FACTS

In 1999 and 2000, John C. Crowell ("Debtor") and Defendant CIT Group/Equipment Financing, Inc. ("CIT Group/Equipment"), entered into valid security agreements granting CIT Group/Equipment security interests in a 1996 Caterpillar Tractor, a Nagano Mini

Excavator, and a Volvo Michigan Wheel Loader. Order Granting Summary Judgment in Favor of CIT Group/Equipment Financing, Inc. ("CIT Group/Equipment Order"), filed May 29, 2003, ¶¶ 3–4 (Hodges, Bankr.J.). CIT Group/Equipment properly filed financing statements to perfect the security interests. *Id.*, ¶ 4.

Also in 1999 and 2000, the Debtor and Defendant CIT Financial USA, Inc. ("CIT Financial") entered into a valid and enforceable security agreement that granted CIT Financial a security interest in a 1994 Caterpillar D9R (the "1994 CAT") (hereinafter referred to along with the 1996 Caterpillar Tractor, the Nagano Mini Excavator, and the Volvo Michigan Wheel Loader as "the Equipment"). Order Granting Summary Judgment in Favor of CIT Financial USA, Inc. ("CIT Financial Order"), filed May 29, 2003, ¶¶ 3–4 (Hodges, Bankr. J.). CIT Financial properly perfected its interest by filing a financing statement. *Id.*, ¶ 4.

On May 2, 2001, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. CIT Group/Equipment Order, *supra*, ¶ 1. Plaintiff Lloyd T. Whitaker was appointed Chapter 11 trustee in September 2001 and remained trustee over the bankruptcy estate when the case was converted to one under Chapter 7 of the Bankruptcy Code on December 19, 2001. *Id.*

During June or July 2001, the Debtor moved from North Carolina to New Mexico without giving notice to either Defendant. CIT Group/Equipment Order, ¶ 5; CIT Financial Order, ¶ 5.[1] Both Defendants failed to file UCC financing statements on their respective pieces of the Equipment in New Mexico within the four-month window allowed by former N.C. Gen.Stat. §§ 25–9–103(3)(a), (d), and (e) (1999). CIT Group/Equipment Order, ¶ 15; CIT Financial Order, ¶ 14.[2]

In December 2001, the Debtor transferred the 1996 Caterpillar Tractor and the Mini Excavator to Superior Energy Services, Inc. ("Superior"), by leasing that property to them for an indefinite period. Judgment Avoiding Transfer of Nagano Mini Excavator and Cat D5HLGP, filed August 20, 2002, ¶ 5 (Hodges, Bankr.J.). The Bankruptcy Court found that Superior was a transferee for value. *Id.*, ¶ D.[3] The Bankruptcy Court further ruled that the transfer to Superior was not authorized by the Bankruptcy Code, avoided the transfer under Section 549 of that Code, and allowed Plaintiff to recover the property. *Id.*, ¶¶ A–C.

---

1. Both Defendants challenge the Bankruptcy Court's finding that the Debtor moved to New Mexico. The CIT Group/Equipment Financing, Inc.'s Response to Trustee/Plaintiff's Brief on Appeal ("CIT Group/Equipment's Response"), filed September 5, 2003, at 14–15; CIT Financial USA, Inc.'s Response to Trustee Plaintiff's Brief on Appeal ("CIT Financial's Response"), filed September 4, 2003, at 15. Since the Defendants prevail even if the Debtor did move to New Mexico, it is unnecessary to scrutinize this finding of the Bankruptcy Court.

2. CIT Financial claims that the 1994 CAT was not a "mobile good" and that CIT Financial would only have been required to refile if the collateral, not the Debtor, left the jurisdiction. CIT Financial's Response, at 13–15. Since the Defendants will prevail even assuming that the 1994 CAT was a "mobile good," the Court will not scrutinize the Bankruptcy Court's implicit finding that it was, in fact, a "mobile good" and that, absent a tolling provision, the Debtor's move to New Mexico imposed upon CIT Financial a duty to refile.

3. CIT Group/Equipment challenges the finding that Superior was a transferee for value. CIT Group/Equipment's Response at 5–7. For the same reason given in Footnote 1, *supra*, it is unnecessary to scrutinize this finding of the Bankruptcy Court.

Around January 7, 2002, the Debtor transferred the Wheel Loader to Bob McAfoos without the approval of the Bankruptcy Court. CIT Group/Equipment Order, ¶ 6. The Bankruptcy Court held that "a purchaser for value like ... McAfoos took the Property free and clear of any liens." Judgment Avoiding Transfer to Defendant Bob McAfoos, and Preserving Transfer for Benefit of Estate, filed May 21, 2002, ¶ 3 (Hodges, Bankr.J.).[4] In that same order, the Bankruptcy Court avoided the transfer to McAfoos under Section 549 of the Bankruptcy Code and allowed Plaintiff to recover the property. *Id.,* ¶ 7.

Later, without explicitly overruling itself on whether McAfoos took the property free of liens or on whether Superior was a transferee for value, the Bankruptcy Court held that CIT Group/Equipment did not "lose its perfected security interest in the equipment. Since [CIT Group/Equipment's] security interest was perfected at the time of the transfer of the equipment from the debtor to the transferees and remains so today, the transferees took the equipment subject to [CIT Group/Equipment's] security interest." CIT Group/Equipment Order, ¶ 31.

After recovering the 1996 Caterpillar Tractor, the Mini Excavator, and the Wheel Loader, and with permission from the Bankruptcy Court, Plaintiff sold those items for a net price of $66,671.12. Plaintiff's Brief on Appeal to the District Court in the CIT Group/Equipment Case, filed August 20, 2003 ("Plaintiff's Brief (CIT Group/Equipment Case)"), at 5. Plaintiff currently holds this money in escrow. *Id.*

On January 24, 2002, the Debtor transferred the 1994 CAT to Anthony Antonio and Martin Scheleving (d/b/a "A & A Excavators"), and A & A Excavators, Inc. (hereinafter referred to along with Antonio and Scheleving as "A & A Excavators") without the approval of the Bankruptcy Court and in violation of the Bankruptcy Code. Judgment Avoiding Transfer of CAT D9R to Defendant A & A Excavators, filed July 26, 2002, ¶¶ 5, 7–8 (Hodges, Bankr.J.). The Bankruptcy Court found that these purchasers were "purchaser[s] of the [1994 CAT] for value." Judgment, *supra,* ¶ 9.[5] Because the transfer to A & A Excavators was not authorized by the Bankruptcy Court and violated the Bankruptcy Code, the Bankruptcy Court avoided the transfer and allowed Plaintiff to recover the 1994 CAT from them. *Id.* Plaintiff now holds the 1994 CAT in storage. Plaintiff's Brief on Appeal to the District Court in the CIT Financial Case ("Plaintiff's Brief (CIT Financial Case)"), filed August 20, 2003, at 6. Later, the Bankruptcy Court found that CIT Financial did not "lose its perfected security interest in the [1994 CAT]. Since [CIT Financial's] security interest was perfected at the time of the transfer of the [1994 CAT] from the debtor to [A & A Excavators] and remains so today, the transferees took the [1994 CAT] subject to [CIT Financial's] security interest." CIT Financial Order, ¶ 30.

## II. PROCEDURAL HISTORY

Plaintiff filed complaints in Bankruptcy Court demanding, in pertinent part, that

---

4. CIT Group/Equipment also challenges the finding that McAfoos was a transferee for value. CIT Group/Equipment's Response, at 6–7. For the same reason given in Footnote 1, *supra,* it is unnecessary to scrutinize this finding of the Bankruptcy Court.

5. CIT Financial challenges the finding that A & A Excavators was a transferee for value and disputes some of the details regarding the transfer as found by the Bankruptcy Court. CIT Financial's Response, at 3–7. For the same reason given in Footnote 1, *supra,* it is unnecessary to scrutinize these findings.

the Court find that the Defendants no longer have security interests in the Equipment. Both Defendants moved to dismiss, and the Bankruptcy Court treated the motions as ones for summary judgment. Plaintiff filed cross motions for summary judgment. On May 29, 2003, the Bankruptcy Court granted both Defendants' motions for summary judgment and denied Plaintiff's cross motions. Plaintiff appealed. The issues designated for appeal were:

> Issue One: Did [Superior Energy Services, Inc., Bob McAfoos, and A & A Excavators]—the Section 549 transferees to whom the Debtor sold the equipment and from whom the Trustee recovered the equipment—own the equipment free and clear of any lien of [CIT Group/Equipment or CIT Financial]?

> Issue Two: When the Trustee avoided and recovered the Debtor's Section 549 transfers of the equipment to [Superior Energy Services, Inc., Bob McAfoos, and A & A Excavators,] did the Trustee then stand in the shoes of these transferees under Section 551 of the Bankruptcy Code and own the equipment exactly as the transferees had owned the equipment?

Trustee/Appellant's Designation of Record on Appeal and Statement of Issues on Appeal in the CIT Group/Equipment Case; Trustee/Appellant's Designation of Record on Appeal and Statement of Issues on Appeal in the CIT Financial Case. Both Defendants responded, and Plaintiff moved to strike certain parts of both Defendants' responses.

## III. DISCUSSION

### A. Standard of review

■ The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. *In re Deutchman,* 192 F.3d 457, 459 (4th Cir. 1999). The conclusions of law of the Bankruptcy Court are reviewed *de novo. Id.* Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Green,* 934 F.2d 568, 570 (4th Cir.1991) (citing *In re First Federal Corp.,* 42 B.R. 682, 683 (W.D.Va.1984)). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

In addition, due regard must be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses. *In re Tudor Associates, Ltd., II,* 20 F.3d 115, 119 (4th Cir.1994); Bankr.R. 8013.

### B. Choice of law

The Bankruptcy Court did not attempt "to decide any choice of law issue in this matter because it appears the Uniform Commercial Code ... is the same in North Carolina and New Mexico." CIT Group/Equipment Order, at 5 n.1; CIT Financial Order, at 6 n.3. No party disputes this treatment of the choice of law question, so this Court will follow suit. As did the Bankruptcy Court, this Court will cite to the Uniform Commercial Code ("UCC") as it has been adopted by Chap-

ter 25 of the North Carolina General Statutes.

The Court must also determine whether to apply the current or former version of N.C. Gen.Stat. § 25–9–515 and its UCC counterpart, UCC § 9–515.[6] The present version of the North Carolina statute became effective July 1, 2001. Section 25–9–702 provides that the amendment "does not affect an action, case, or proceeding commenced before July 1, 2001." Since the Debtor declared bankruptcy in May 2001, the Bankruptcy Court determined that the former statute, the version that includes the tolling provision, should apply. CIT Group/Equipment Order, at 8–9; CIT Financial Order, at 8–9. Plaintiff does not argue against this decision on appeal and actually cites to the predecessor UCC provision, UCC § 9–403(2), in its appellate briefs.[7] Therefore, the Court will apply the former version of the statute.

The applicable statute reads:

a filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse. *If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of 60 days or until expiration of the five-year period, whichever occurs later.* Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.

N.C. Gen.Stat. § 25–9–403 (1999) (emphasis added).

## C. Status of the liens on the Equipment in the hands of good-faith transferees

■ Plaintiff contends the Defendants failed to file financing statements on the Equipment in New Mexico and thereby lost their security interests in the Equipment when Plaintiff transferred it to McAfoos, Superior, and A & A Excavators (the "good faith-transferees"). Plaintiff further argues that, since the Equipment was unencumbered when it was in the hands of the good-faith transferees, Plaintiff took it free of liens when he avoided the transactions to the good-faith transferees and recovered the Equipment.

The first issue, then, is whether the good-faith transferees took their respective pieces of the Equipment free of the

---

6. The codification of these provisions is quite confusing. Section 25–9–515 was previously found at N.C. Gen.Stat. § 25–4–403. That statute closely tracked the language of UCC § 9–403(2). Those two provisions have been recodified as N.C. Gen.Stat. § 25–9–515 and UCC § 9–515, respectively.

Under the old provisions, "lapse [of a perfected security interest] was tolled if the debtor entered bankruptcy or another insolvency proceeding." N.C. Gen.Stat. § 25–9–515, Official Comment 4. The present provisions "delete[ ] the former tolling provision and thereby impose[ ] a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's bankruptcy." *Id.*

7. Plaintiff writes that he "believes there was a strong argument that the revised UCC applies to this case, [but] he will for purposes of this appeal address his arguments as though the former UCC applies, which is what the Bankruptcy Court determined." Plaintiff's Brief (CIT Group/Equipment Case), at 8 n.4; Plaintiff's Brief on Appeal to the District Court in the CIT Financial Case ("Plaintiff's Brief (CIT Financial Case)"), at 8 n.2.

Defendants' security interests. As explained above, applicable North Carolina law provides that a perfected security interest remains perfected for five years and that the five-year period is tolled when the debtor files for bankruptcy. N.C. Gen. Stat. § 25–9–403 (1999). The five-year period for filing a continuation statement is not an issue in this case. However, as explained in Footnote 2, *supra,* former N.C. Gen.Stat. § 25–9–103(e) is also applicable to this case. That statute provides that a perfected security interest remains perfected only until "[t]he expiration of four months after a change of the debtor's location to another jurisdiction." That statute does not include a tolling provision similar to the one in former N.C. Gen.Stat. § 25–9–403. Since the Debtor moved from North Carolina to New Mexico in June or July 2001, the Defendants' window for re-filing, if it was not tolled, ended on or before November 30, 2001. This would mean that there was no perfected security interest on the property when Plaintiff transferred it to the good-faith transferees.

The issue becomes, therefore, whether the tolling provision from former N.C. Gen.Stat. § 25–9–403 extends to former N.C. Gen.Stat. § 25–9–103(e) so as to toll the four-month window within which a creditor must file financing papers after a debtor moves to a new jurisdiction. Plaintiff offers a compelling argument that the § 25–9–403 tolling provision is completely irrelevant to the § 25–9–103(e) four-month rule and that the tolling provision, therefore, does not save the creditor who, like the Defendants, fails to file within four months of a bankrupt debtor's change in location. First, Plaintiff argues that one may distinguish the cases cited by the Defendants and the Bankruptcy Court because those cases, all of which tolled the four-month rule, rely heavily on the fact that the parties seeking to enforce the four-month rule were not good-faith transferees. Second, Plaintiff contends that these opinions involved transactions occurring before 1994, when tolling the four-month period made more sense because it was unclear whether creditors were even allowed to file financing statements after a debtor declared bankruptcy.[8] One also finds support for Plaintiff's position in *In re Utah Agricorp, Inc.,* where the court held that "[t]he fact that Section 9–403 specifically deals with the tolling of the necessity of filing continuation statements in insolvency proceedings makes the absence of any mention of such an extension for the temporary grace period allowed [following a debtor's relocation] further indicative of the Code's intent not to extend such periods in insolvency proceedings." 12 B.R. 573, 578 (Bankr.D.Utah 1981); *cf. also In re Ken Gardner Ford Sales, Inc.,* 41 B.R. 105, 111 (Bankr.E.D.Tenn.1984) ("perfection of a security interest is not fixed at the time of bankruptcy if perfection is conditional on performing some later action to make the perfection relate back.")

As appealing as Plaintiff's argument may be, it simply is at odds with the law in this Circuit. In *Reedy River Ventures*

---

8. Title 11, United States Code, § 362(b)(3), following a 1994 amendment, makes it clear that a debtor's filing for bankruptcy "does not operate as a stay ... of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection." The House Report that accompanied the amendment confirms that "certain actions taken during bankruptcy proceedings pursuant to the Uniform Commercial Code to maintain a secured creditor's position as it was at the commencement of the case do not violate the automatic stay. Such action could include the filing of a continuation statement and the filing of a financing statement." HR Rep. 103–835, 103rd Cong., 2nd Sess. 21 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, pp. 3340, 3354.

*Ltd. P'ship v. Synoptics Communications, Inc.*, the Fourth Circuit held that "[s]ince Reedy River's security interest ... was perfected ... in California at the time MaCo declared bankruptcy, the interest remained perfected ... in spite of Reedy River's failure to file a financing statement." 38 F.3d 1213 (table), 1994 WL 560570, *2 (4th Cir.1994). The Court relied in part on a treatise which explained that a "debtor's bankruptcy within the four month period will have the same effect as though the [creditor] had perfected its security interest by filing in the new state." *Id.* (quoting 2 James White & Robert Summers, *Uniform Commercial Code*, § 24–21, at 396 (3d ed.1988)). In *Reedy River*, the Circuit upheld the decision of the district court in the District of South Carolina which had held that "the four-month rule of [California's version of the UCC] was tolled by MaCo's bankruptcy proceedings." *Reedy River Ventures Ltd. P'ship v. Synoptics Communications, Inc.*, 818 F.Supp. 145, 146 (D.S.C.1993); *see also In re Halmar Distrib., Inc.*, 968 F.2d 121, 128 (1st Cir.1992) (acknowledging split authority and holding that "the filing of the bankruptcy petition by Ralar tolled the period within which General Electric was required to file a financing statement in Massachusetts.").[9]

The Court understands that the cases cited above arose when creditors were not certain as to whether they were allowed to file financing statements after a debtor declared bankruptcy and that the current version of 11 U.S.C. § 362(b)(3) allows creditors to file financing statements even after the debtor has declared bankruptcy.

Also, as the Bankruptcy Court in the District of Utah pointed out, one could easily interpret the presence of a tolling provision in former N.C. Gen.Stat. § 25–9–403 and the absence of one in the former N.C. Gen.Stat. § 25–9–103(e) to mean that the legislature did not intend for the four-month period to be tolled. *Utah Agricorp, supra*, at 578. Perhaps this should lead to a new rule in this Circuit that would prevent the four-month grace period from being tolled by a debtor's bankruptcy. However, such a rule would be a departure from Fourth Circuit precedent and must be implemented by that Court or by the Supreme Court.

Therefore, this Court holds that the four-month period within which the Defendants had to file in New Mexico was tolled when Plaintiff filed for bankruptcy. As such, the good-faith transferees did not take the property free from the Defendants' liens.

### D. Status of the liens on the Equipment after avoidance

■ Plaintiff concedes that "if this Court determines that [the good-faith transferees] acquired the Equipment subject to the lien of [the Defendants], then the Trustee recovered the transfers of the Equipment subject to the lien of [the Defendants], and [the Defendants] would have first claim to [the 1994 CAT and] the escrowed net sales proceeds." Plaintiff's Brief (CIT Group/Equipment Case), at 18; Plaintiff's Brief (CIT Financial Case), at 18. The Court agrees and finds that Plaintiff recovered the Equipment subject

---

**9.** Plaintiff attempts to distinguish this case by arguing that the court only tolled the four-month period because the party seeking to enforce the four-month rule had always known of the prior security interest. Plaintiff's Brief (CIT Group/Equipment Case), at 13–15; Plaintiff's Brief (CIT Financial Case), at 13–15. While the *Halmar* court did discuss the secured party's knowledge of a prior security interest, the Court explicitly held that the UCC tolling provision was an "equally valid, if not even stronger reason" for holding that the first lien holder had not lost its interest. *Halmar*, 968 F.2d at 126.

to Defendants' liens.[10] Consequently, Plaintiff now holds the escrowed funds and the 1994 CAT subject to those liens.

### E. Plaintiff's motions to strike

In rendering this opinion the Court has neither cited to nor relied upon any of the challenged material. As such, the Plaintiff's motions are denied as moot.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the decisions of the Bankruptcy Court are hereby **AFFIRMED**, and this matter is hereby remanded to the Bankruptcy Court for further proceedings if appropriate.

**IT IS FURTHER ORDERED** that Plaintiff's motions to strike are hereby **DENIED** as moot.

---

**10.** The Court does not adopt or reject Plaintiff's closely related statement that "[i]f [the good-faith transferees] owned the Equipment free and clear of any lien of CIT, then the Trustee obtained the Equipment free and clear of the lien of CIT." Plaintiff's Brief (CIT Group/Equipment Case), at 18; Plaintiff's Brief (CIT Financial Case), at 18.